The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Kirk.

Filed June 20, 1885.

---

No. 11,539.

THE PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY *v.* KIRK.

MASTER AND SERVANT.—*Scope of Authority.*—*Liability of Master for Injury to Another.*—Where a servant is engaged in accomplishing an end which is within the scope of his employment, and while so engaged adopts means reasonably intended and directed to the end, which result in injury to another, the master is answerable for the consequences, regard-

The Pittsburgh, Cincinnati and St. Louis Railway Company v. Kirk.

less of the motives which induced the adoption of the means; and this, too, even though the means employed are outside of his authority, and against the express orders of the master.

SAME.—*Negligence.*—Where C., a section foreman, returning with his crew and hand-car from work, encounters obstructions on the line of his employer's road, and thereupon directs the car to be transferred to the track of a parallel line operated by another company, as occasionally had been done before, but without the knowledge or consent of either company, and while proceeding on such track his car is negligently propelled against the car containing the section men of such road, whereby one of the latter is injured, C.'s employer is liable.

From the Marion Superior Court.

*T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, A. Baker* and *E. Daniels,* for appellant.

*H. N. Spaan,* for appellee.

MITCHELL, C. J.—There is involved in this record but a single question, the solution of which depends upon the law applicable to the following facts: Eastward from the city of Indianapolis for some miles, the lines of the Pittsburgh, Cincinnati and St. Louis and the Cincinnati, Hamilton and Indianapolis Railways lie parallel, and a few feet distant from each other. On the 25th day of August, 1882, Dennis Cronin was a section foreman in the service of the former, and Richard Kirk was, at the same time, in like service for the latter. Each had control of a " crew," a hand-car and the requisite tools for repairing track. The daily routine of Cronin's duty was to meet his crew each morning at 7 o'clock, proceed on the car with men and tools along the line of his section, direct such repairs as were required, and return in like manner with car, tools and men, to the tool-house near the depot, arriving at 6 o'clock P. M. On the evening of the date mentioned after quitting work, and while thus returning from the east end of his section, Cronin encountered an engine and train of cars which obstructed his further progress on the line of his employer's road, and he thereupon directed the car to be transferred from the line of the Pittsburgh, Cincinnati and St. Louis Railway Company to that of the Cincinnati,

The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Kirk.

Hamilton and Indianapolis Railway Company, and while proceeding on the line of the latter, his car was negligently propelled against the car on which Kirk was proceeding homeward with his crew. As a consequence Kirk was, without fault on his part, thrown from his car and severely injured.

It was shown that no authority whatever existed for the transfer of the car, nor was there any right in the one railway company to use the line of the other. It appeared that occasionally like use had been made of the line of the Cincinnati, Hamilton and Indianapolis Railway Company, by the trackmen of the Pittsburgh, Cincinnati and St. Louis Railway Company, but it does not appear that this was known to or authorized by the officers of either company, nor was the use so frequent as to raise an inference of knowledge.

Kirk brought suit against the Pittsburgh, Cincinnati and St. Louis Railway Company and had a verdict and judgment, and the question is, whether upon the foregoing facts the finding and judgment can be upheld.

The argument is pressed with much force and ingenuity, that because the duties of Cronin and his crew pertained wholly to the appellant's line, and as they had no authority either express or implied to go upon the track upon which the injury occurred, they were at the time within neither the line of duty nor scope of their employment, and that being thus outside of both the employer is in consequence not liable for their misconduct.

It is further contended that inasmuch as at the time of the injury Cronin and his men had quit work, and were proceeding homeward, the transfer of the hand-car, for the purpose of avoiding the obstruction, was a mere incident to the service in which they were engaged, resorted to for their own convenience, and for that reason the employer is exempt from liability for the resulting injury.

The inquiry in hand embraces the following considerations:

1. Was the servant at the time engaged in prosecuting the

business of the master, with authority, either express or implied, to accomplish in some manner an end then in view, and did the wrongful or injurious act have relation to the consummation of such end?

2. Was the manner chosen by the servant, resulting in the injury complained of, so far incident to the end in view as that it was reasonably, under the circumstances, designed for its attainment? or was it for some purpose merely personal to the servant, having no relation to or fitness for the accomplishment of the business in which he was engaged?

Whether a servant in a given case was acting within the scope of his employment, in pursuance of his line of duty, or, on his own responsibility, in pursuit of his own pleasure or convenience, must usually depend upon the facts in such case. To undertake to lay down a general rule applicable to all cases would not only be difficult, but impossible. But we think this much may be said, where a servant is engaged in accomplishing an end which is within the scope of his employment, and while so engaged adopts means reasonably intended and directed to the end, which result in injury to another, the master is answerable for the consequences, regardless of the motives which induced the adoption of the means; and this, too, even though the means employed were outside of his authority, and against the express orders of the master. 2 Thomp. Neg. 889, section 6; Wood Master and Servant, pp. 593, 594.

In the case of *Philadelphia, etc., R. R. Co.* v. *Derby,* 14 How. 468, the question was said to be in all such cases, not whether the servant was obeying or disobeying the master's orders, but whether or not he was at the time acting in the course of his employment, or was in the relation of servant to the master.

Where a servant steps aside from the master's business and does an act not connected with the business, which is hurtful to another, manifestly the master is not liable for such act, for the reason that having left his employer's business, the relation of master and servant did not exist as to the wrong-

ful act; but if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the master is liable.

The point is well illustrated by the case of *Quinn* v. *Power*, 87 N. Y. 535 (41 Am. R. 392). In that case the pilot of a ferry boat plying between the city of Hudson and the village of Athens, on the Hudson river, when about starting on a regular trip from one point to the other, invited a boatman on board, promising to put him on board his boat, which was lying mid-river and out of the course which it was the pilot's duty to pursue in making his trip. In attempting to deliver the boatman on his boat the ferry boat collided with a tow attached to the canal boat, and the plaintiff's intestate was thrown from the canal boat into the river and drowned. The case was decided upon the basis that the deviation from the usual and selected route was without the master's authority, and that but for that fact the injury would not have occurred. FINCH, J., in the course of a learned opinion, said: " In deviating from " the prescribed route, " the servants; might disregard the instructions of the master, but they were none the less engaged in the master's business of transporting passengers from Athens to Hudson because they did not follow the usual route, or pursued another or even a forbidden track. They were still doing their employer's work, though in a manner contrary to his instructions. If they stopped the boat in the middle of the river they did not cease to be engaged in the master's business, even if the motive; was some purpose of their own, they were still about their usual employment, although pursuing it in a way and manner to subserve also such purpose. * * * They were doing it in a mode and manner perhaps not authorized, and possibly, in some sense, to effect a purpose of their own, but none the less acting within the scope of their employment and engaged in the master's business." *Joel* v. *Morison*, 6 Car. & P. 501, and *Sleath* v. *Wilson*, 9 Car. & P. 607, were cited in that case.

In the first it was held that if a servant, while driving his master's cart on his master's business, make a detour from his usual route, for his own purpose, his master will be liable for damages resulting from the careless driving of the servant while out of his road. The principle decided in the other case was substantially the same.

It has been held by this and other courts, that trackmen and laborers going to and returning from work on a railroad are, during such time, servants of the company, and so far in the line of service that for an injury received while going or coming, through the negligence of a fellow servant, the company is not liable. *Gormley* v. *Ohio, etc., R. W. Co.*, 72 Ind. 31; *Wilson* v. *Madison, etc., R. R. Co.*, 18 Ind. 226.

It was part of the section foreman's duty to return with his car, tools and crew over the defendant's track to the tool-house near the depot, as well to observe the condition of the track as to have his car and tools there ready for use at 7 o'clock the next morning. The prescribed route was over the track of the railroad in whose service he was. He had no authority to go upon the other, but encountering an obstacle on the line of his employer, either for his own convenience or possibly to accommodate the other servants of the master, and thus make them better disposed toward it and its service, he judged it convenient or expedient, rather than wait until the appellant's line was cleared, to invade the neighboring line, and by that means he attained the end of delivering the car, tools and crew at their destination. In all this, whatever his motive was, he was pursuing the master's service, that of returning the car, tools and crew to their appointed place, as was his custom and duty, and while he pursued the service, in an unauthorized and possibly forbidden way, he and those with him were, during the time, in the relation of servants to the appellant. Concede that in going off the employer's line he pursued a course which was beyond his authority, his purpose in doing so was neverthe-

less to accomplish an end within his employment and reasonably, as he supposed, fitted to reach that end.

The case of *Marrier* v. *St. Paul, etc., R. W. Co.*, decided by the Supreme Court of Minnesota, 15 Am. and Eng. Railroad Cases, 135, is not opposed to the conclusion here reached. In that case it appeared that the trackmen built a fire on the right of way of the railway company for the purpose of warming their coffee. They negligently permitted the fire to escape to an adjacent field, and it was held that the company was not liable. The case is rested upon the ground that in preparing their dinner on the right of way the trackmen were engaged exclusively in their own business, as much so as they would have been in doing the same thing in their homes, or as if they had gone into the plaintiff's field and built the fire there for the same purpose. So, in the case of *Aycriggs* v. *New York, etc., R. R. Co.*, 30 N. J. L. 460, relied on by appellant. It appeared in that case that the captain of a ferry boat, which was lying at the wharf, seeing a barge on fire in the river, without any orders to do so, went out into the river and undertook to tow the burning barge up the stream. In doing this the burning barge came in contact with another boat to which fire was communicated and which was damaged. It was held that going in aid of the burning barge was outside of the scope of the captain's employment, and the master was not liable. The case is like that of a coachman who should take his master's coach and horses from his stable without authority and go in pursuit of an object not connected with his master's service. There would be no liability of the master.

In this case it can not be said that the servant had stepped aside from the master's service for a purpose of his own. The most that can be said of it is that in accomplishing an end within the scope of his employment he adopted a method wholly unauthorized, which was possibly resorted to to accommodate himself and those under him ; but whatever the motive may have been, since the end aimed at was, as averred

in the complaint and as the judgment must have found, within the line of service, it can not be said upon the evidence that he was acting without authority in a matter not connected with his employment.

We think that in ruling on the complaint and in overruling the motion for a new trial, no error was committed, and accordingly the judgment is affirmed, with costs.

Filed June 26, 1885.