No. 472.

## THE OAKLAND CITY AGRICULTURAL AND INDUSTRIAL SOCIETY v. BINGHAM.

MASTER AND SERVANT.—*Discretion of Action in Employee.—Misjudgment of Employee.—Liability of Master.*—Where a master employs one in a vocation requiring him to act under certain conditions, and commits to his discretion the duty of determining when and what action may be necessary, the employer will be responsible for the misjudgment, as well as the misconduct of the servant, and if he acts when there is no occasion for it at all, though intending to accomplish some end of the employment, such responsibility will still exist.

SAME.—*Liability of Master for Acts of Servant.—Rule as to.*—The master will be responsible for the acts of the servant when they are performed in the general scope of his employment and with a view of accomplishing some end thereof, but the master will not be held liable for the acts of a servant who uses his position for a cloak to protect him in the execution of a purely private purpose, unconnected with the service of the employer.

SAME.—*Exercise of Care in Employment of Servant.—Lack of.—Responsibility of Master.—Acts Beyond Authority.*—A complaint based upon the theory that the master is bound to exercise reasonable care in the selection of his servant, and, having failed to do so, the master would be responsible for the wrongs of the servant, whether they occurred in the line of his employment or not, is bad, and the overruling of a demurrer thereto will constitute reversible error.

SAME.—*Evidence.—What May be Proven Under General Denial.—Acts Beyond Authority.*—In an action against a master for the negligent and wrongful acts of a servant it was incumbent upon the plaintiff to prove the commission of the trespass, and that such trespass was committed by the servant while engaged in the discharge of his duty as such servant; and, under the general denial, any evidence was admissible tending to disprove the trespass, or to prove that when the trespass was committed the servant was not acting for the master.

From the Gibson Circuit Court.

*L. C. Embree, A. P. Twineham* and *W. D. Robinson,* for appellant.

*C. A. Buskirk* and *J. W. Brady,* for appellee.

CRUMPACKER, J.—This action was brought by Bingham

against the agricultural society for damages resulting from an alleged assault committed upon the plaintiff by a servant of the defendant.

The complaint was in two paragraphs, the first of which alleges, in substance, that the defendant is an agricultural society, incorporated under the laws of this State, and in August, 1890, it held a fair, at which agricultural and other industrial products were exhibited, and to which the general public were invited; that the defendant had in its employment at such fair, as a policeman and gate-keeper, one Willis Swallow, whose duty was to preserve peace and good order, and to exclude those who were not entitled to admission, and to eject those who were disorderly; that plaintiff held a pass entitling him to admission to said fair, and he peaceably entered the fair grounds thereon, and while lawfully therein the "defendant's said employee, Swallow, pretending that plaintiff had not entered said fair grounds properly, and that plaintiff ought to be ejected therefrom by said employee, and that plaintiff had no right of entrance to said grounds, and in an effort by said employee to exclude the plaintiff from said fair grounds said employee then and there acting as such employee," without any cause or provocation whatever, assaulted the plaintiff and beat and bruised him with a club on and about his head and face so that he was permanently disabled.

The second paragraph alleges that said Swallow was possessed of a "cruel and quarrelsome disposition," which unfitted him for the duties of said employment, but the defendant negligently engaged him therein without investigating his fitness or qualifications therefor; that plaintiff had the right to go upon said fair ground, and while lawfully and peaceably attempting so to do, said Swallow, "wholly without cause or provocation therefor, but in a spirit of oppressive malice and wantonness, fell upon the plaintiff and violently ejected him from said fair ground," and while so do-

ing assaulted and beat him with a club so that his nose was broken and he was otherwise permanently injured.

A demurrer to each paragraph of the complaint was over-ruled and the cause, put at issue by the general denial, was tried by a jury, who found for the plaintiff and assessed his damages at $275. Judgment was rendered upon the verdict, and the defendant appeals and assigns for error the ruling upon the demurrer to each paragraph of complaint and in refusing a new trial.

The point is made against the first paragraph of complaint, that it fails to show the assault complained of was perpe-trated by the gate-keeper while he was acting in the line of his employment. It is insisted with much persistence and plausibility that the averments that appellee was rightfully upon the fair ground, and was orderly and peaceable, show the assault was not committed by the gate-keeper in his ca-pacity as a servant, because he was only authorized to eject objectionable persons, and the pretext that appellee was ob-jectionable, being without foundation, did not characterize the act as one for which the appellant was responsible. The relation of master and servant existed between the appellant and the gate-keeper, to which relation the doctrine of *re-spondeat superior* obtains. A master is responsible not only for the omissions and shortcomings of his servant, but for positive misfeasances in the line of duty. Such responsi-bility is founded upon the theory that the master authorized the wrong, either expressly or by implication. It is a fiction of the law that the master is always present in the conduct of his business, and any wrong committed by a servant while so engaged, though tortious and malicious in its character, is the wrong of the master. Authority in the physical ab-sence of the master is often implied from the nature of the employment and the character of the act, though it be shown to have been in violation of the express command of the master. But the application of this principle, for cogent reasons, extends only to acts properly within the range of

the employment. A master does not stand sponsor for the deportment of one in his service except while he is actually engaged about the master's business. It is very difficult in some cases to determine what acts are to be imputed to the master and what not; but where the servant clearly departs from his employment, and performs an act for some purpose of his own, independent, of, and not connected with, the master's affairs, the latter can not be held liable therefor.

It was said by Lord KENYON, in *McManus* v. *Crickett*, 1 East, 106: "When a servant quits sight of the object for which he is employed, and without having in view his master's orders pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and, according to the doctrine of Lord HOLT, his master will not be answerable for such act."

It was the early rule that the master could not be held for the wilful wrongs of the servant, even in the line of the employment, but that rule has been quite generally discarded by the modern adjudications. The test seems to be, was the act complained of done within the general scope of the employment, and with a view of accomplishing some end thereof? If so, the employer will be answerable, though the act be ill-advised, malicious, and against his express order. *Pittsburgh, etc., R. W. Co.* v. *Kirk*, 102 Ind. 399; *Phelon* v. *Stiles*, 43 Conn. 426; *Adams* v. *Cost*, 62 Md. 264; *Howe* v. *Newmarch*, 12 Allen, 49; *Golden* v. *Newbrand*, 52 Iowa, 59; *Rounds* v. *Delaware, etc., R. 'R. Co.*, 64 N. Y. 129; *Quinn* v. *Power*, 87 N. Y. 535; Wood Master and Servant, pp. 593 and 594.

But a master will not be held liable for the act of a servant who employs his position as a cloak to protect him in the prosecution of a purely private purpose, unconnected with the business of the former. *Evansville, etc., R. R. Co.* v. *Baum*, 26 Ind. 70; *Gilliam* v. *South, etc., R. R. Co.*, 70 Ala. 268; *Rounds* v. *Delaware, etc., R. R. Co., supra.*

Where a master employs one in a vocation requiring him

to act under certain conditions and commits to his discretion the duty of determining when and what action may be necessary, the employer will be responsible for the misjudgment, as well as the misconduct, of the servant, and if he acts when there is no occasion for it at all, though intending to accomplish some end of the employment, such responsibility will still exist.

This doctrine is applicable to the case in judgment, as it appears that the gate-keeper was authorized to preserve order and eject those who were not rightfully upon the fair ground, and the duty of judging when one was disorderly or was wrongfully upon the ground seems to have been committed to him. If, in the exercise of such judgment, he *wrongfully* ejected appellee from the ground, or if a fancied violation of some rule of demeanor so excited the gate-keeper's anger that he inflicted a malicious injury in attempting to enforce its observance, the appellant should be held for the result. The paragraph under consideration contains an averment that the gate-keeper perpetrated the assault while acting as such, and this averment, though general, is not repugnant to any other allegation, and in the light of the principles noted it must be held sufficient.

A radically different question arises upon the second paragraph of complaint. It is based upon the theory that appellant was bound to exercise reasonable care in the selection of a gate-keeper, and having failed to do so it should be answerable for the wrongs of that functionary whether they occurred in the line of his employment or not. Every person owes a duty to those upon his premises lawfully and by his invitation express or implied, to see that they are not exposed to danger as far as reasonable care and vigilance can protect them.

One has no right to maintain a dangerous pitfall upon his premises where injury is likely to result to one lawfully thereon, nor has he the right to keep a ferocious animal likely to injure those rightfully upon his premises, but we

know of no instance in which this principle has been applied to the employment of servants. Every sane person is solely responsible for his own conduct except where he acts for or with another. An employer can not be held to account for failing to exercise care in the selection of a suitable person for a given position unless the failure to discharge the duties of the position properly resulted in an injury to another; and where an injury so results, the employer is liable, regardless of the amount of care he may have used in the selection of the servant. Counsel for appellee in support of the ruling of the court cite: *Chicago, etc., R. W. Co.* v. *Harney*, 28 Ind. 28 ; *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261 ; *Indianapolis, etc., R. W. Co.* v. *Johnson*, 102 Ind. 352 ; *Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1.

These cases have no application whatever to the question under consideration. They relate solely to the duty of the master to one servant in respect to the employment and retention of co-servants, yet they are all grounded upon the principle that the master is responsible only for misconduct in the line of employment, even where he negligently employs an incompetent servant.

The case of *Sweat* v. *Rogers*, 6 Heisk. 117, was an action for damages committed by two slaves owned by the defendant in burning and robbing the plaintiff's storehouse. The complaint alleged that the slaves were of " bad character for stealing and pilfering," and the defendant being cognizant of their character and habits in that respect allowed them to go abroad, and took no steps to prevent them from practicing their pilfering propensities. The complaint was held bad because the wrong complained of was not done in the line of duty for the master.

In the case of *Curtis* v. *Dinneen* (Dak.), 30 N.W. Rep. 148, the defendant was an innkeeper and the plaintiff was her guest, and sued for an assault and battery perpetrated by the defendant's servant. The complaint did not show that the servant was acting in the line of his engagement at the time he com-

mitted the assault, but it alleged that he " was of a rough, brutal, passionate and ferocious disposition," and was in the habit of assaulting and beating guests, which the defendant well knew, but negligently retained him in her service in and about the inn after such knowledge. The culpable servant was the defendant's husband, and while the court expressed some doubt respecting her liability for failing to discharge him on that ground, it was also declared that she was not responsible upon any theory, because the injury was not inflicted by the servant while engaged as such. See, also, *McCann* v. *Tillinghast*, 140 Mass. 327. ˋ

We know of no principle upon which the paragraph of complaint in question can be upheld, and it was reversible error to overrule the demurrer to it.

Complaint is also made of the action of the court in refusing to give instructions, three and six, requested by appellant.

No. 3 was substantially covered by others given, so no available error occurred in refusing it.

No. 6 was as follows: " If you find from the evidence that the striking and beating complained of were done by one Willis Swallow, a servant of the defendant at the time of said striking and beating, and said servant himself was without fault and in a place in which he had a right to be, and that he did the striking and beating of the plaintiff in the honest exercise of the right which the law gave him of defending his own person against an unlawful assault upon him by the plaintiff, whereby he was in danger of suffering great bodily harm, then you must find for the defendant, because a beating of the plaintiff under such circumstances could not be held to be the act of the defendant."

This instruction was refused, we are informed by counsel, upon the ground that it was predicated upon the defence of *son assault demesne*, and that being an affirmative defence, could not be asserted under the issues created by the general denial. *Norris* v. *Casel*, 90 Ind. 143, is relied upon in sup-

port of the action of the court.   It is true, where an individual is sued for an assault the general traverse only puts in issue the fact of the perpetration of the assault, by him. *Son assault demesne* is an affirmative defence, which admits the trespass complained of, but advances facts to justify it.

The first paragraph of the complaint in the case before us charges an assault by appellant's servant while in the performance of duty as such, thus by construction of law making it the appellant's assault.   It was incumbent upon appellee to prove not only the commission of the trespass, but that it was committed by appellant's servant while so engaged.   The general denial put all these facts in issue, and any evidence was admissible thereunder tending to disprove the trespass or to prove that the servant when he perpetrated it was not acting for appellant.   If it were true that appellee assaulted the gate-keeper first and the latter undertook to defend himself, and while so engaged inflicted the injury complained of, it would exclude the imputation of authority from appellant, because it would show that the gate-keeper was acting for himself and not for appellant at the time. This would be a good defence, not of *son assault demesne,* but that it was not appellant's trespass.   If A. is sued for an assault, he may, under the general denial, show that the assault complained of was committed by B., and thus exclude the idea of his guilt.   This was clearly the theory of the instruction under consideration, and we are of the opinion that the court erred in refusing it.

Other questions are discussed by counsel, but they are of such a character that they will not likely arise at another trial, so we will not extend this opinion to decide them.

The judgment is reversed, with instructions to sustain the demurrer to the second paragraph of complaint.

Filed May 12, 1892.