## HITCH v. UNITED STATES.

### (District Court, S. D. Illinois. April 8, 1895.)

1. UNITED STATES MARSHAL—FEES AND MILEAGE.
   In a proceeding before a commissioner, under Rev. St. § 1042, for the discharge of poor convicts, a marshal is entitled, under section 829, to fees for serving mandates to bring before the commissioner convicts applying for discharge, for attendance before the commissioner, and for discharging such convicts.

2. SAME.
   Under Rev. St. § 829, allowing mileage for going, only, to serve any warrant, etc., or other writ, a marshal is entitled to mileage on writs of commissioners for the production of prisoners under section 1042.

3. SAME.
   Where prisoners were in custody under commitment by a commissioner, and subsequently indictments were returned into court, sitting at a distance, and bench warrants were issued for such prisoners, the marshal is entitled, under Rev. St. § 829, to mileage in serving such warrants, but not to fees for such service, nor expenses of arrest.

4. SAME.
   Under Rev. St. § 829, a marshal is entitled to mileage in traveling a second time to attend the hearing of a defendant before a commissioner; such hearing having been postponed from a previous date, when the marshal was present.

5. SAME.
   Under Rev. St. § 829, allowing mileage "for each mile actually and necessarily traveled," a marshal is entitled to mileage only on the shortest practicable route by the ordinary mode of travel, though he actually traveled by a longer route, which, because of better railroad facilities, can be traveled in less time, for the reason that it was near the close of a term of court, and, to save further expense in maintaining prisoners, it was necessary for them to arrive before court closed, and it was doubtful if this could be done by the shorter but slower route.

Petition by Charles P. Hitch, marshal of the Southern district of Illinois, for fees claimed by him, and disallowed by the comptroller for official services.

### Facts.

First. The petitioner entered upon the discharge of his official duties May 27, 1889. He rendered his accounts monthly and quarterly. They were duly ap-

proved by this court in the presence of the district attorney. And the compensation actually received by him, together with the amounts claimed by him in this proceeding, would not amount to the maximum compensation allowed him by law for any of the calendar years involved. Second. In his account for fees earned during October, 1889, he made a claim for 488 miles of travel, at 6 cents a mile, from Cairo to Springfield, to serve bench warrants, on different dates, in two cases, being 244 miles of travel on each writ. In his account for the same month he also claimed transportation of four prisoners from Springfield to Cairo via East St. Louis, 976 miles, at 10 cents a mile, and the same for each of four deputies, being 244 for each prisoner and each deputy. On this account the comptroller allowed him mileage for 432 miles, at 6 cents a mile, for serving the two bench warrants, and disallowed the other 56 miles claimed, 28 miles on each writ, at 6 cents a mile, being disallowance of $3.36 on this claim of mileage. In like manner, he disallowed 112 miles of the distance claimed for transportation of the prisoners, and mileage of the deputies, being a further disallowance of $22.40, and a total disallowance for that month of $25.76. The evidence shows that the shortest practicable route from Springfield to Cairo is via Centralia, and is 216 miles, but the route via East St. Louis, which is 244 miles, is many hours shorter in time, because of better railroad connection; and it is the route actually traveled in performing these services, for the reason that it was just at the close of the term of this court at Cairo, and it was important to serve these writs, and have the prisoners at Cairo, before the court should adjourn, and it was not certain that could be done if the route via Centralia was taken. Third. In his account for November, 1889, he claimed fees for serving six mandates of United States commissioner to bring four convicts before him on their several applications for discharge under section 1042, Rev. St., at $2 each, being $12; also for discharging each of said convicts, at 50 cents each, $3, and for attendance before the commissioner, on the hearing of the applications of three of said convicts for discharge, on three different days, at $2 for each attendance, being $6, a total of $21, all of which was disallowed by the comptroller. In his account for January, 1890, fees for services of similar character, amounting to $16.50, were claimed; for February, $51; for March, $34; for April, 1891, $9; for June, 1891, $10; for July, 1891, $5; for August, 1891, $5; for September, 1891, $23.50; for October, 1891, $9.50; for November, 1891, $11.50; for January, 1892, $5; for February, 1892, $51.50; for March, 1892, $30.50; for April, 1892, $6.50; for May, 1892, $14; from July 1 to September 30, 1892, $25.50; from October 1 to December 31, 1892, $2.50,—all of which were disallowed by the comptroller, being a total disallowance for services of this character from November, 1889, to January, 1893, of $331.50. Fourth. In his account for September, 1890, he claimed mileage, $6.72, for travel from Springfield, his residence, to Danville, to attend a hearing before United States commissioner. The prisoner in this case had previously been arrested by the marshal, and taken before the commissioner for a hearing, but on the prisoner's application the hearing was continued to a time some days later, and the prisoner was held to bail to await the time fixed for the hearing, and the marshal returned to Springfield, but on the day fixed for the hearing he returned to Danville, and was at the hearing. This claim was disallowed by the comptroller. Fifth. In the account for April, 1892, the marshal claimed $6 for service of three bench warrants on three persons named. He also claimed $3.10 for expenses in endeavoring to arrest these persons, the dates of these expenses being identical with the dates of service of the bench warrants. He also claimed $12.96 for mileage on each of these bench warrants from Cairo to Springfield, "a distance of 216 miles," being $38.88, and in all, for April, 1892, $47.98, all of which was disallowed by the comptroller. This court was then in session at Cairo, and the grand jury, at the Cairo session, returned indictments against the three persons named in these warrants. The prisoners had previously been committed to jail at Springfield, on preliminary hearings before a United States commissioner at Springfield, and were remaining in jail there, under such commitments, to await the action of the grand jury. When the indictments were returned at Cairo, bench warrants were actually issued to the marshal for them, and he served them, by proceeding from Cairo to Springfield, taking the prisoners from the Springfield jail, and bringing them into open court at Cairo.

James A. Connolly, for plaintiff.

Wm. E. Shutt, U. S. Dist. Atty., for the United States.

ALLEN, District Judge (after stating the facts). It will be observed that these several disallowances may be divided into separate classes, as follows: Class 1. For serving mandates of commissioners to produce before them convicts applying for discharge under section 1042, Rev. St., $180. Class 2. For discharging poor convicts, under section 1042, when ordered by the commissioner after the hearing provided for by that section, $47. Class 3. For attendance upon commissioners, on hearing, in cases of poor convicts, under section 1042, Rev. St., $102. Class 4. For mileage from Springfield to Chester, on mandates issued by the court at Springfield upon the warden of the penitentiary at Chester, Ill., to produce poor convicts applying for discharge under section 1042, Rev. St., $78.96. Class 5. For travel, with bench warrants, from Cairo to Springfield, for expenses to arrest on such bench warrants, and for serving said warrants, $47.98. Class 6. For mileage from Springfield to Danville to attend a hearing of a defendant before a commissioner, such hearing having been postponed from a previous date, when the marshal was present, $6.72. Class 7. For mileage and transportation of prisoners from Cairo to Springfield via East St. Louis, 122 miles, instead of via Centralia, 116 miles, $25.76. Classes 1, 2, and 3 will be considered together.

Under section 1042, Rev. St., "when a convict has been imprisoned thirty days solely for non-payment of a fine or costs, he may make application in writing to any commissioner in the district where he is imprisoned, setting forth his inability to pay such fine, or cost, and after notice to the district attorney, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter." If upon such hearing it shall appear to the commissioner that the convict is unable to pay the fine, or fine and cost, and has no property exceeding $20 in value, except such as is exempt by law, he administers the oath to him, as prescribed in that section, and the convict shall then be discharged, and the commissioner gives to the jailer or keeper of the jail a certificate setting forth the facts. While this section does not, in direct terms, provide that the poor convict shall be brought before the commissioner, yet it manifestly contemplates a hearing before the commissioner, at which the district attorney may be present, and of which he must be notified. Certainly, it cannot be contended that such hearing should be had in the absence of the petitioner. An oath is also to be administered by the commissioner to the convict. The word "oath" implies an oral swearing before the commissioner. How is the convict to get from his prison to the commissioner for a hearing and oath, except by means of a writ from the commissioner, directed to some one to bring the prisoner before him? And to whom, except the marshal, is the commissioner to direct his writ? From the moment when sentence is pronounced against him until the moment when the commissioner announces his discharge of the convict, he is, in contemplation of law, in the custody of the mar-

shal, until by him delivered to the prison keeper, and in the custody of the latter while he remains inside the prison; and, until his sentence is completely served, he can only be taken from the prison by the marshal, on a writ of some kind, except in cases of a habeas corpus writ directed to the keeper. The commissioner has no right to direct a writ to the prison keeper. He must direct his writ to the marshal. So when the application is made the commissioner necessarily directs a writ to the marshal to bring the convict before him. This writ puts the convict in the custody of the marshal. By section 847, Rev. St., the commissioner is entitled to fees for his services under section 1042. Why not the marshal also? His services are as necessary in serving the writ as if it were issued by the district or circuit court. His presence is necessary at the hearing before the commissioner, as the convict must be there, and in his custody, and the marshal must then and there discharge him, if the commissioner so decides after the hearing. Section 829, Rev. St., provides that the marshal's fee for service of any warrant, attachment, summons, capias, or other writ, except execution, venire, or summons, or subpoena for a witness, shall be $2 for each person on whom service is made. The same section provides that the marshal's fees for attending examination before a commissioner shall be $2 a day, and the same for each deputy, not exceeding two, necessarily attending, and 50 cents for discharging a prisoner; and section 847, Rev. St., calls this proceeding under section 1042 an "examination," and fixes the commissioner's fees for it. As to these three items, therefore, the conclusion is that the marshal is entitled to them, amounting to $329.

Item 4, for mileage on writs of commissioner for production of prisoners under section 1042, seems to be proper. The writs were issued at Springfield, and the marshal traveled with them from Springfield to Chester for the purpose of there obtaining United States prisoners who were confined in the penitentiary, bringing them before the commissioner, at Springfield, who had issued the writ. Section 829, Rev. St., provides a fee of 6 cents a mile for going, only, to serve any warrant, etc., or other writ. These mandates of the commissioner are clearly within the designation "other writ"; the proof shows the travel was actually made, as claimed, on such writs; and the marshal is therefore entitled to the amount of this item, $78.96.

Item 5. These claims, we have seen, are for service of bench warrants, $6; expenses endeavoring to arrest, $3.10; and mileage from Cairo to Springfield, with said warrants, $38.88,—for three prisoners who were already in jail in Springfield, on commitment by United States commissioner for offenses against the United States, for which offenses they were subsequently indicted at Cairo, in the same district. When these bench warrants issued, the defendants were then actually in the custody of the United States at Springfield, and they were wanted in court at Cairo to plead to the indictments returned against them there. Had the indictments been returned into the court at Springfield, where the prisoners

were confined, no writ would have been necessary, and no fees could have accrued to the marshal for bringing them before the court. Rev. St. § 1030. But in these instances the court was at Cairo, and the defendants in jail at Springfield, 216 miles away. The court, by its clerk, did actually issue and deliver to the marshal writs which were, in form, bench warrants, ordering the arrest, etc., of the defendants. The service required of the marshal was not merely to bring prisoners into court, from a prison at the place where the court was being held, as is contemplated by section 1030. It is not important to consider whether bench warrants were actually necessary in these instances. These were writs actually issued, and the prisoners were actually transported, by virtue of them, from Springfield to Cairo. The marshal is therefore entitled to his statutory mileage for travel on these writs, amounting to $38.88. Kinney v. U. S., 54 Fed. 319. As to the fees of $6 claimed for serving them, and the claim of $3.10 for expenses in endeavoring to arrest these persons, it is otherwise. There was no necessity for "service of warrants,"—formal reading of these writs to these prisoners,—for they were already in the custody of the United States, and although the writs were "warrants," in form, yet the form must give way to the fact. Hence, the charge for service of the writs was properly disallowed by the comptroller. The same is true of the charge of $3.10 for expenses in endeavoring to arrest. These expenses are allowed the marshal to cover his actual necessary expenditures while searching for the defendant, and paying assistants, etc. But in these cases he had no searching to do. The defendants were secure in the custody of the United States when he started from Cairo for them, and he did not endeavor to arrest them, for they were already arrested. He had nothing to do but to go to Springfield and get them, and, his mileage for that travel being allowed him, he can properly claim no more. The court therefore finds, as to this item (5), that the marshal is entitled to $38.88, and is not entitled to the other $9.10 claimed.

Class 6. This item of $6.72 for mileage from Springfield to Danville to attend an adjourned hearing before a commissioner seems to have been disallowed on the theory that the marshal was entitled to only one mileage, for travel, to the place where a hearing is had before a commissioner, no difference how many times it may be actually necessary for the marshal to make the travel, by reason of continuances granted by the commissioner. The commissioner did grant a continuance of some days to the defendant when he was first brought before him. This the commissioner had a right to do, it being presumed that proper cause was shown by the defendant. This made it necessary either for the marshal to remain there during the period of continuance, to the neglect of his other duties, or to return to his home and office at Springfield. But he must be present at the hearing to take charge of the prisoner at the conclusion, if necessary, and to be there he must again make the travel from Springfield to Danville. He did so, and is clearly entitled to the mileage for it, $6.72.

Class 7. This is a disallowance of $25.76 arising from a charge by the marshal of mileage and transportation of prisoners from Springfield to Cairo by rail, via East St. Louis, 244 miles. The comptroller claims that the distance from Springfield to Cairo by rail, actually necessary to be traveled, is via Centralia, and is only 216 miles, while the marshal admits the difference in distance, but claims that the East St. Louis route, although 28 miles longer, is the "shortest practicable route," because, by reason of better railroad connections and faster trains, it can be traveled in several hours less time, and is the route he actually traveled with these prisoners, for the reason that it was just at the close of a term of court at Cairo, and it was necessary, to save further expense of maintaining the prisoners, that they should be at Cairo before the term closed, and it was not certain they could be there if the route via Centralia were taken. Mileage is allowed the marshal only "for each mile actually and necessarily traveled." Rev. St. § 829. While it might occasionally facilitate the business of the court to allow the marshal a discretion to travel with writs and prisoners by the longer route, and quicker, rather than by the shorter but slower route, and the court does not hold that an emergency may not arise to justify the marshal in demanding and receiving his mileage by the longer route, yet no such emergency appears in this case, and it is believed that the public interest is better subserved by the general rule that the actual and necessary travel specified by the statute shall be held to be the travel by the shortest practicable route by the ordinary mode of travel. This seems to be the rule applied by the comptroller, as to these items, and no emergency being shown to justify a departure from this rule, as to the travel, the court approves it, and finds for the defendant as to this class, $25.76. The judgment of the court, therefore, is that the plaintiff recover the sum of $456.06 and his cost of suit.