## REXROTH ET AL. *v.* HOLLOWAY.

[No. 6,600.   Filed December 14, 1909.]

1. WORDS AND PHRASES.—*"Necessary."*—The word "necessary" may import indispensably requisite, needful, appropriate, reasonable for the purpose, convenient, useful, suitable, or inevitable, but its true meaning must be determined from the circumstances in which it is used.  p. 37.

2. WORDS AND PHRASES.—*"Reasonable."*—The word "reasonable" imports appropriate, necessary, ordinary, or usual under the circumstances, and always implies the exercise of good faith and a sound discretion.  p. 38.

3. MASTER AND SERVANT.—*Liability to Third Persons.*—The master is liable to third persons injured by the wrongs of his servant acting within the scope of his employment, though the particular act was not authorized.  p. 39.

4. MASTER AND SERVANT.—*Scope of Employment.*—*Wrongful Acts.*—Wrongful acts committed by a servant in doing the thing authorized by the master subjects such master to liability therefor.  p. 41.

5. MASTER AND SERVANT.—*Bailment.*—*Injuring Horse.*—*Scope of Employment.*—A company whose traveling salesman hired a horse to drive to Niles (ten miles away), and he drove to Buchanan (fourteen miles away), thereby fatally injuring the horse, is liable therefor, where the master's business required the salesman to go to Buchanan.  p. 41.

From Laporte Circuit Court; *John C. Richter*, Judge.

Action by John H. Holloway against Charles M. Rexroth and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*F. J. Lewis Meyer*, for appellants.
*Anderson, Parker & Crabill*, for appellee.

HADLEY, J.—Appellant Rexroth was a traveling salesman for appellant Humiston, Keeling & Co.  In the course of his employment he was required to go to Buchanan, Michigan,

to call on customers of his employers. He hired a horse from appellee, saying that he desired to drive to Niles; that he was going there in the interest of his employers. Niles was about ten miles away, while Buchanan was about fourteen miles away. Instead of going to Niles, he went to Buchanan, overdrove the horse and overwatered him, and by reason thereof the horse died on the following day. Appellee sued appellants to recover damages for the loss of said horse.

The only question presented is whether, to fix the liability for the injury on the master (Humiston, Keeling & Co.), appellee was required to prove that the hiring of the
1.   horse was necessarily incident to the performance of his master's business, or reasonably incident thereto. It seems to us that this is a quibble as to terms. Appellants have cited to us decisions where the term "necessarily incident," in this connection in similar cases, is used. *American Tel., etc., Co.* v. *Green* (1905), 164 Ind. 349; *Davis* v. *Talbot* (1894), 137 Ind. 235; *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 9 L. R. A. 754, 22 Am. St. 593; *Howe Machine Co.* v. *Ashley* (1877), 60 Ala. 496. Appellee has cited decisions where the term "reasonably incident" is used. *Pittsburgh, etc., R. Co.* v. *Kirk* (1885), 102 Ind. 399, 52 Am. Rep. 675; *Oakland City, etc., Society* v. *Bingham* (1892), 4 Ind. App. 545; 1 Jaggard, Torts, p. 258.

The word "necessary" has no fixed character peculiar to itself. It admits of all degrees of comparison. *McCulloch* v. *Maryland* (1819), 4 Wheat. *316, 4 L. Ed. 579; *Moale* v. *Cutting* (1883), 59 Md. 510. It may sometimes mean "indispensably requisite," at others "needful," at others "incident" or "conducive to." *Chambers* v. *City of St. Louis* (1860), 29 Mo. 543. It is sometimes used to express expediency or appropriateness. *Getchell & Martin Lumber, etc., Co.* v. *DesMoines, etc., R. Co.* (1901), 115 Iowa 734, 87 N. W. 670.

It is sometimes used to express that which is reasonable for the purpose required (*Mobile, etc., R. Co.* v. *Alabama,*

*etc., R. Co.* [1888], 87 Ala. 501, 6 South. 404; *In re Rhode Island, etc., R. Co.* [1901], 22 R. I. 457, 48 Atl. 590; *Mayor, etc.,* v. *Chesapeake, etc., Tel. Co.* [1901], 92 Md. 692, 48 Atl. 465), or that which is reasonably convenient under the circumstances (*Kelly* v. *People's Transportation Co.* [1870], 3 Ore. 189; *St. Louis, etc., R. Co.* v. *Trustees, etc.* [1867], 43 Ill. 303). It is sometimes given the meaning of that which is useful and suitable, or needful and conducive to, or expedient or convenient, for the purpose required. *Board, etc.,* v. *Isenberg* (1900), 10 Okla. 378, 61 Pac. 1067; *Commissioners, etc.,* v. *Moesta* (1892), 91 Mich. 149, 51 N. W. 903; *Jerome* v. *Ross* (1823), 7 Johns. Ch. *315, 11 Am. Dec. 484; *Aurora, etc., R. Co.* v. *Harvey* (1899), 178 Ill. 477, 53 N. E. 331. There are cases which hold that the word "necessary" means "indispensably requisite," "inevitable" or "not to be avoided." *Lockwood* v. *Mildeberger* (1899), 159 N. Y. 181, 53 N. E. 803; *Town of Oldtown* v. *Dooley* (1876), 81 Ill. 255; *Hitch* v. *United States* (1895), 66 Fed. 937; *Stevenson* v. *State* (1885), 17 Tex. App. 618; *State, ex rel.,* v. *Mayor, etc.* (1894), 39 Neb. 745, 58 N. W. 442; *English* v. *Reed* (1895), 97 Ga. 477, 25 S. E. 325. But in the cases from different tribunals, giving these various definitions, there is little, if any, actual conflict, and from them it is made clear that the word "necessary" must be considered in the connection in which it is used; that it is a word susceptible of various meanings; that it may import absolute physical necessity or inevitability, or that which is only convenient, useful, appropriate, suitable, proper or conducive to the end sought. *Mayor, etc.,* v. *Chesapeake, etc., Tel. Co., supra; McCulloch* v. *Maryland, supra.*

"Reasonable" is a term difficult of definition, and usually it must be considered with the facts of the particular controversy in determining its force and latitude. *In re Nice & Schreiber* (1903), 123 Fed. 987. It is sometimes used to express that which is appropriate and necessary (*Levering* v. *Union, etc., Ins. Co.* [1867], 42 Mo.

88, 97 Am. Dec. 320) ; it includes good faith and the exercise of a sound discretion (*Dearborn* v. *Balten* [1888], 64 N. H. 568), and it imports what is ordinary or usual under the circumstances of the case.   *Reed* v. *Missouri, etc., R. Co.* (1902), 94 Mo. App. 371, 68 S. W. 364; *Geno* v. *Fall Mountain Paper Co.* (1895), 68 Vt. 568, 35 Atl. 475.

With these definitions of terms, we come to consider the established rules as to the liability of a master for the torts of the servant.   The general rule is, ''that which the superior has put the inferior in motion to do, must be regarded as done by the superior himself, * * * and embraces all cases in which the failure of the servant to observe the rights of others in the conduct of the master's business has been injurious.   * * *   The master is liable for the acts of his servant, not only when they are directed by him, but also when the scope of his employment or trust is such that he has been left at liberty to do, while pursuing or attempting to discharge it, the injurious act complained of.   It is not merely for the wrongful acts he was directed to do, but the wrongful acts he was suffered to do, that the master must respond.''   Cooley, Torts (2d ed.), pp. 625, 626.

''It is in general sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged, when the wrong was committed, and that the act complained of was done in the course of his employment. The master, in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders.   The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of

passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another.'' Cooley, Torts (2d ed.), pp. 630, 631, quoting from *Rounds* v. *Delaware, etc., R. Co.* (1876), 64 N. Y. 129. See, also, *Mott* v. *Consumers Ice Co.* (1878), 73 N. Y. 543; *Ochsenbein* v. *Shapley* (1881), 85 N. Y. 214.

The wrong need not be an intentional one, and even if the servant, in committing the injury, neglected some word of caution or instruction of the master, the master will not be exempt. *Oakland City,. etc., Society* v. *Bingham, supra.* In such case, there may be no moral wrong attributable to the managing officers, ''but the fact remains that in the management of their own business through agents an injury has been inflicted on others. That they trusted a servant who has ventured to disobey instructions is their misfortune, but it ought not also to be the misfortune of others who had no voice in his selection, and who had no concern in the question who should manage the company's business beyond the common concern of all the public that it should not be managed to their injury.'' Cooley, Torts (2d ed.), p. 633. '' 'The powers of the agent are, *prima facie*, coëxtensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.' '' *American Tel., etc., Co.* v. *Green* (1905), 164 Ind. 349.

''If the principal holds out an agent or servant as possessing authority to control a shop or place of business, and a third person acts upon the faith of the appearance so created, the principal may, in such a case as this, be bound by the acts of the apparent agent within the scope of his ostensible authority, although as between the agent and his employer no such authority in fact existed.'' *Over* v. *Schiffling* (1885), 102 Ind. 191.

''To undertake to lay down a general rule applicable to all cases would not only be difficult, but impossible. But

we think this much may be said, where a servant is
4.   engaged in accomplishing an end which is within the
scope of his employment, and while so engaged adopts
means reasonably intended and directed to the end, which
result in injury to another, the master is answerable for
the consequences, regardless of the motives which induced
the adoption of the means; and this, too, even though the
means employed were outside of his authority, and against
the express orders of the master." *Pittsburgh, etc., R. Co.
v. Kirk* (1885), 102 Ind. 399, 52 Am. Rep. 675. See, also,
2 Thompson, Negligence, p. 889, §6; Wood, Master and
Servant, pp. 593, 594.

Where a master employs one in a vocation, requiring him
to act under certain conditions and commits to his discretion
the duty of determining when and what action may be
necessary, the employer will be responsible for the misjudg-
ment, as well as the misconduct, of the servant, and if he
acts when there is no occasion for it at all, though intend-
ing to accomplish some end of the employment, such respon-
sibility will still exist. *Oakland City, etc., Society v. Bing-
ham, supra; Levi v. Brooks* (1877), 121 Mass. 501; *John-
son v. Barber* (1849), 10 Ill. 425, 50 Am. Dec. 416.

In case of doubt, the test may well be whether he was
acting *bona fide* in furtherance of the master's interest.
Cooley, Torts (2d ed.), p. 628; *Birmingham Water-Works
Co. v. Hubbard* (1887), 85 Ala. 179, 4 South. 607, 7 Am.
St. 35.

Under these rules, it is clear that the words "necessary,"
or "necessarily," as used in the authorities cited by appel-
lant, should not be interpreted in the strict sense of
5.   indispensable, unavoidable or requisite, but in the
broader sense of appropriate, usual or convenient.
To hold otherwise would place these decisions in direct con-
flict, in principle, with a long and unbroken line of authori-
ties. Giving the words this interpretation, the difference
in their meaning from "reasonable," or "reasonably," if

any, is so slight as to be wholly immaterial and insubstantial.

To hold that the master could be held liable for the tort of his servant only while engaged in an act necessarily incident to his employment, and give the word "necessarily" the strict definition of the term, would practically free the master from liability; since it is seldom that a servant commits a tort, while performing an act that is indispensable or unavoidable, in the performance of the principal act he is set to do.

Here the principal act required of appellant Rexroth was to go to Buchanan. He could go by train, he could go by horse and buggy, or he could walk. No one was necessary in the sense of being indispensable, inevitable or unavoidable. Either of the first two surely would be necessary in the sense of being appropriate, usual or reasonable. We find no reversible error in the record.

Judgment affirmed.