On rehearing, original opinion withdrawn, and the following substituted.
Morgan, J.
Dupree, plaintiff below, while riding on a bicycle in the streets of Denver was struck by an automobile driven by defendant, Nagel, and kept, subject to the call of the owner, Evans, in the garage oí the other two defendants, Gibson and Culver, employers of Nagel. Plaintiff had .judgment for personal injuries for $500 against all three of the defendants, and they appealed. No point is made here as to Nagel’s negligence and his liability, but it is contended that his employers *325 are not liable for the reason that he took the Evans car, and used it, without right or authority, and without the knowledge of his employers or the owner, and after being forbidden by his employers to- take any car out' of the garage for any purpose except upon the call or direction of the owner; and for the further reason that when the accident occurred he was not acting within the scope of his employment but had departed therefrom on business of his own.
Gibson and Culver, as partners, were the proprietors of a public garage where, as the principal part of their business, they kept automobiles for the owners, looked after them while in the garage and sent them to the owners and sent after them, at the owners’ request. Nagel was employed in the garage, andi as part of his duties he took automobiles to the owners, and brought them back to the garage, and had batteries charged,'belonging to automobiles kept in the garage. The accident occurred while he was returning in the Evans automobile from the Carstarphen Electric Company’s place of business with a battery, to- which place he had taken it to have it charged. After obtaining the battery he drove the automobile to 'a supply house, and there purchased a pair of pliers for his own use, and was on his way back to the place of his employment when the accident occurred. The evidence discloses that he took the automobile for his own convenience because the battery was heavy and he did not want tO' walk and carry it, although he was supposed to walk, and that he had no authority to take it out on this occasion or to use it, for such purpose, at any time.
The assignments of error will be disposed of under the three following questions, although the first actually includes the other two: 1. Was the servant within the scope of his employment and about his masters’ business when the acc ident occurred ? 2. Did' the lower court err in excluding the evidence, offered by the employers, to the effect that they told the servant that he was not to take out of the garage any automobile without their order or the request of the owner? *326 3. Did the servant’s deviation from the direct route back to the garage, separately, or coupled with his disobedience- in using the automobile, dissolve, or suspend the relationship of master and servant at the time of the accident, or prevent him from being, nevertheless, about his masters’ business?
First. Apart from his- driving the car to- the supply house where he bought the pair -of pliers, which.will be referred to later, the facts disclose, and the jury so- found, that he was about his masters-’ business -and within the scope of his employment in going after the battery, and in returning with it, although he was- using a means of carrying it, suggested and carried out by his own will and for his personal convenience, and contrary to- the directions of his employers, and without their consent or the consent of the owner. And' as the accident occurred when he was so- returning, his employers. are liable for the tort committed. “This rule is obviously founded upon the great principle of social duty, that every man in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another.” Farwell v. Boston, etc., R., 4 Metc. (Mass.) 49. Furthermore, “a master is answerable because the servant is about the master’s business, and it is, on the whole, better that the master should suffer for defaults in the conduct of the business, than that innocent third parties should bear the losses that such defaults cast upon them.” Huffcut’s Agency (2d Ed.), p. 194, citing Pollock on Torts, (5th Ed), pp. 72, 74. It is stated in 26 Cyc. 1533, that the master is liable for the negligence of the servant if such negligence occurred “within the scope o-f the employment.” And in the case of Phila., etc., R. R. Co., v. Derby, 14 How. 468, 14 L. Ed. 502, it is said by the United States Supreme Court that:
“The rule- o-f respondeat superior,’ or that the master shall be civilly liable for the tortious acts of his servant, is o-f universal application, whether -the act be one of omission or commission, whether negligent, fraudulent or deceitful. If it be done in the course of his employment, the master is liable;' *327 and it makes no difference that the master did not authorize, or even know of the servant’s act or neglect, or even if he ¡disapproved or forbade it, he is equally liable, if the act be done in the course of his servant’s employment. (See Story on Agency, sec. 452; Smith on Master and Servant, 152)”
It is also said, in 15 Cyc. 1534, that “the purpose of the act rather than its method of performance is the test of the scope of employment.” It is said also in the case of Pittsburg, etc., R. R. Co. v. Kirk, 102 Ind. 399, 1 N. E. 849, 52 Am. Rep. 675, that:
“Where a servant is engaged in accomplishing an end which is within the scope of his employment, and while SO' engaged adopts means, reasonably intended and directed to the end, which resulted in injury to another, the master is answerable for the consequences, regardless of the motives which induced the adoption of the means; and this, too, even though the means employed were outside of his authority, and against the express orders of the master.” Citing 2 Thomp. Neg. 889; Wood Mast. & Ser., 593, 4.
A master is liable for the tort of his servant committed in disobedience of his master’s orders, provided such disobedience does not carry the servant entirely outside the scope of his employment. For example,-if the disobedience has relation merely to the manner in which an act, incident to the authorized functions of the servant, is performed.
6 Labatt’s Mast. & Ser. (2nd Ed.) 6894, citing Philadelphia, etc., R. R. Co. v. Derby, supra.
It is plain from these authorities that, if the accident occurred while the employe was engaged in performing one of the duties of his employment, it would make no difference that he used the forbidden means that he did use to perform such duty, so far as the plaintiff’s rights are concerned, provided his employers placed him where he could, with their implied authority, by his mere disobedience, use the forbidden means. Thére can be no doubt that Nagel was engaged in his masters’ business and within the scope of his employment, *328 in going after the battery and bringing it back to their place of business, and the fact that he used the automobile in the performance of such duty did not carry him outside of the scope of his employment, although the use of such means was without the authority and consent of his masters and of the owner, and against his employers’ instructions; the relationship of master and servant was not thereby suspended or extinguished; this is the test, if he was about his masters’ business, with possible exceptions not necessary to be discussed here. Such disobedience in using the automobile for such purpose has relation merely to the manner in which the act (going after and returning with the battery) was performed. The masters are liable for injury caused by the disobedience of the servant in so using the automobile. It is clear the employers would have been liable if the accident had occurred while the servant was taking the car to the owner, or bringing it back, and the only difference is his disobedience, which does not relieve his employers. See authorities,, infra.
The many .modifying circumstances, involved in a discussion of this principle, have led to some statements in the opinions specifically applicable to> each particular case, not applicable to all, but, when critically examined, there is but little conflict of authority. ' There are cases where the instrumentality or means used by the servant did not belong to, or were not within the partial or entire control of the master, such as Goodman v. Kennell, 3 Car. & P., 167; Wilsowa v. Perm. R. Co., 63 N. J. L. 385, 43 Atl. 894; Stretton v. Toronto, 13 Ont. 139; which seem to afford an exception to the general rule — that the master is liable for the tort of the servant committed while engaged in his master’s business and within the scope of his employment. Some of these cases are relied upon by the appellants, on the assumed fact that the employers herein did not own, and had no control over the automobile, and that the employers themselves had no authority to take it out of the garage. But this automobile was in-their charge with authority to take it out on the owner’s request and this *329 gave Nagel authority from his employers to take it out of. the garage and run it, although only on request of the owner, as a trusted and competent driver thereof, and the mere fact that he took it out and used it as he did about his masters’ business did not dissolve the relationship of master and servant, or, by such disobedience, relieve the employers from liability to the plaintiff. There is nothing in the facts in this case to take it out of the general rule, or to place it among any of the possible exceptions heretofore referred to; or to cause it to be affected by the result reached in Andrews v. Green, 62 N. H. 436; Walton v. N. Y. Cent. Sleeping Car Co., 139 Mass. 566, 2 N. E. 101; or Palmer v. St. Albans, 60 Vt. 427, 13 Atl. 569, 6. Am. St. 125. The employers were, in this instance, bailees of the automobile, and it was within their control, subject, of course, to the contract of bailment, and, by the employment, it was placed by them under the same control of their employe, and his use of it, simply by his disobedience, was, under the law, the.employers’ use, both as,to the plaintiff and as. to- the owner, so long as he used it about his employers’ business, and within the scope of his employment.
Second. It is contended that the lower court committed reversible error in excluding the testimony of all three of the defendants, which tended to- prove in positive and express terms that Nagel had been instructed not to take out of the. garage any car, and had been -forbidden to do so, without an order from his employers or by the direction of the owner. Such testimony was immaterial', as such fact would have been no defense, as shown by the following, together with the foregoing authorities: In Cosgrove v. Ogden, 49 N. Y. 255, 7, 10 Am. Rep. 361, it is said: “The test of the master’s responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to- do-.” In Burnett v. Oechsner, 92 Tex. 598, 50 S. W. 56-2, 71 Am. St. 880, it is said: “For the mode in which the servant performs *330 the duty he is engaged to perform, if wrongful and to the injury of another, the master, is liable although he may have expressly forbidden the particular act.” Again in the case of Powell v. Deveney, 3 Cush. (Mass.) 300: “The servant, being about the business of his master, the master must be responsible for his acts and cannot exempt himself by any order he may give the servant.” In the case of McClung v. Dearborne, 134 Penn. St. 396, 406, 7, 19 Atl. 698, 8 L. R. A. 204, 19 Am. St. 708, it is said: “It was the master’s duty not only to' give such orders but to see that they were obeyed. It will be seen, therefore, that it was the character of the employment, and not the private instructions given by the master to the servant, that must determine the measure of his liability in any given case.”
Judge Cooley says (2 Cooley on Torts, 3rd Ed., 1028, 1029):
“It is immaterial to the master’s responsibility that the servant at the time was neglecting some rule of caution which the master had prescribed, or was exceeding his master’s instructions, or was disregarding them in some particular, and that the injury which actually resulted is attributable to the servant’s failure to observe the directions given him. In other words, it is not sufficient for the master to give proper directions; he must also' see that they are obeyed. * * * That they (the masters) trusted a servant who has ventured to disobey instructions is their misfortune, but it ought not also to' be the misfortune of others who had no voice in his selection, and who had noi concern in the question who should manage the company’s business beyond the common concern of all the public that it should not be managed to their injury. * * *
The disobedience is culpable in the servant, and the master, having taken those .precautions which, if observed, would have prevented the injury, is free from fault, but, nevertheless, his duty to his neighbor to> so use his own as not to *331 injure the neighbor has failed in performance, and the law leaves him to bear the consequences.”
This testimony was offered presumably, to show that Nagel was not engaged in his masters’ business, and that the accident did not occur in the course of his employment, but its only use and force would be to show that he used an unauthorized and forbidden means in performing his masters’ business; and, as the courts have held that the use of an unauthorized means in doing an authorized act does not relieve the master, the evidence was immaterial. See, also, 26 Cyc. 1533; 20 Am. Eng. Enc. Law, 167; Wharton’s Law of Neg. (1874), sec. 171.
Third. The next question to -determine is involved in the contention of appellants that Nagel departed, momentarily, from the course of his employment and was at liberty, on an errand of his own, when he drove the car to the supply house to- buy a pair of p-liérs for his own use, and that if he had not so departed the accident would not have occurred, although he had obtained the pliers and was on his way back to his place of employment, carrying the battery, when the accident occurred.
There is authority for holding that, even if the servant has departed from his master’s business- on business of his own,’ if, after conducting his private business, he then starts back to his place of employment, -on his way back he is held to have resumed his master’s business. 26 Cyc. 1536, and cases cited.
The question to be determined here, however, is the same as in the foregoing discussion, that is, was he still about his masters’ business, and within the scope of his employment? The court might well have instructed the jury that, if they believed he was about his masters’ business, and within the scope of his employment, when he was returning with the battery in the car, by way -o-f the supply house, and on his way from the supply house with the battery, and the pliers, to the place of his employment when the accident occurred, *332 they should find for the .plaintiff; or, in the negative, if they believed the relationship' of master and servant did not exist when he was going by way of the supply house and: returning therefrom, they should find for the defendants, Gibson and Culver. No such instruction was requested, however, and no particular instruction of this character was given, and noi objection was interposed to the general instruction that the accident must have occurred while he was acting within the scope of his employment, to'- render the defendants, Gibson and Culver, liable. Under these circumstances, it must be concluded that the jury found, under the general instruction, that the accident occurred while the servant was acting within the scope of his employment. That the jury did consider this deviation, going after the pliers, is obvious from the close questioning and cross-questioning of Nagel on this particular incident. The instructions given were sufficiently clear to justify argument before the jury, which might have been taken advantage of by counsel, and, for aught this court knows, was taken advantage of.
The law is well settled that one may be in the service of another and yet at times attend to business or pleasure for himself, and acts done while the servant is at liberty cannot render the master liable; but, if the servant while about his master’s business, makes a slight deviation for ends of his own the master remains liable, as, where the servant drives out of the most direct route for personal ends, or where a pilot diverges from a direct course for ends not connected with a master’s business. Joel v. Morrison, 6 C. & P. 501; Sleath v. Wilson, 9 C. & P. 607; Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959, 47 Am. Rep. 796; Quinn v. Power, 87 N. Y. S35, 41 Am. Rep. 392; Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. 361.
In the case last cited the court said:
“But if the servant, while about his master’s business, makes a slight-‘deviation for ends of his own, the master re *333 mains liable, as, where the servant drives out of the most direct route for personal ends, or where a pilot diverges from the direct course for ends not connected with his master’s business.
In such cases it is, and must usually remain, a question depending upon the degree of deviation and all the attendant circumstances. In cases where the deviation is slight and not unusual,- the court may, and often will, as a matter of law, determine that the servant was still executing his master’s business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master’s business at all, but his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.”
In the cases of Quinn w. Power, supra, and Ritchie v. Waller, supra, it is held that, when the act is so closely connected with the master’s affairs that, though the servant may derive some benefit from it, it may, nevertheless, fairly be regarded as within the course of the employment, the master will be liable. Certainly the facts of this case place it, at least, in the zone, between the t-wo extremes, over which the domininion of the jury should prevail; and, as it cannot be said that the evidence is such, that the court was not justified in submitting this question to the jury and, ,as the lower court did so submit- it, although in general terms, and, as the jury determined the matter in favor of the plaintiff, the judgment entered upon such verdict will not be disturbed.
The other assignments of error, and especially the one relating to- the. admission in evidence of the city ordinance, have been duly considered and resolved against the appellants.

Judgment affirmed.