# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed January 3, 1928.

### JOSEPHINE BRUCE
### VS.
### NATHAN REIF, TRADING AS HESS & REIF.

*Leo J. Cummings* for plaintiff.
*Walter L. Clark* for defendant.

O'DUNNE, J.—

This is a motion for a new trial. Verdict of $1,500 was rendered in favor of the plaintiff against the defendant growing out of personal injury occasioned by the truck of the defendant hardware concern running into the plaintiff, who was standing practically within the safety zone after alighting from a car going west on North avenue. It was broad daylight. The truck of the defendant was being driven by one of its employees who was on a mission on behalf of his master, to wit: putting in of some window-pane glass to fill an order which had come into the store over the telephone. He was sent out on this errand by the master in the hardware store. The motion for a new trial is based on the alleged error of the Court in refusing the third and the sixth prayers of the defendant. As the third prayer is included in the subject matter of the sixth prayer, reference will be made only to the questions involved in the sixth prayer. The sixth prayer sought to have the jury determine whether the employee of the defendant hardware company was, at the time of the accident complained of (resulting in the injuries to the plaintiff) acting within the scope of his employment in that he was not a licensed chauffeur, and defendant testified he was not authorized to drive or use the car on this occasion, or on any other occasion, having no license; that the authorized chauffeur of defendant was then in the store and on duty; that the truck of the defendant was sitting in front or behind of the hardware store. I refused defendant's sixth prayer at the time on the theory that defendant ought not to be heard to say that an employee of his, although admittedly driving the truck in his interests, and then discharging an errand on which he is sent by his master, nevertheless had no authority from the master, direct or implied, to use the master's truck in discharge of the master's work. This seemed to me to violate principles of social justice and permit a man to so conduct his business that his regular employee can take the truck of his hardware business parked in front or in back of his hardware store, in broad daylight, with his regular chauffeur then on duty and in the store engaged in the general work of the store, and the master turn his back and say, after the accident happens that the particular employee in question then had no authority, direct or implied, to use the truck in the discharge of his business; that it was his duty to have walked on the mission he had been sent by his master in the operation of the work of the hardware store.

In the rush of trial work, with a jury in the box, and a multiplicity of prayers to be ruled on then and there (necessarily with some decision and haste), the Court does not always *take* the time that it perhaps should take, to carefully examine all the authorities then submitted. Oftentimes they are *not then submitted*. Frequently counsel come wholly unprepared to support legal propositions with adjudicated cases. In deference to counsel for defendant in this case, it must be stated that he did come prepared to support his sixth prayer with all the adjudicated cases he later submitted in form of brief in the argument of motion for new trial, and the error of not fully *considering* them, was the error of the Court, and not through any lack of full preparation of the learned counsel for the defendant. Had I then fully considered the cases submitted I now feel I would have granted the defendants sixth prayer (with perhaps a slight modification) as being within the law of adjudicated cases, as I am now persuaded. I think my then conception of the law was wrong; that it was rather in accord with principles of social justice, or what the law *ought to be*, rather than what it unfortunately is. If I had it to do over again, I think I would grant the defendant's sixth prayer, with slight modification or explanation. However, I do not feel that it would have in any wise changed the result, or that it should have done so. The jury had ample evidence before it that the employee who was driving the

truck at the time of the accident was tacitly permitted to drive the truck, and had frequently done so on other occasions; that other witnesses had seen him driving it. He had an Illinois license; was about to transfer it and get a Maryland license, which he did a few days later. He testified he had driven the truck two years before for defendant Reif; that their regular chauffeur was on vacation the week of the accident and that he had been told to get his license and drive the truck; that he had driven it for them all of Monday and Tuesday before the accident. He so testified as a witness when called by the defense. It was quite apparent he took defendant's counsel by surprise in so testifying, having previously given signed statements to the contrary. Here, too, serious technical error was committed by the Court in disregarding or defying all canons of evidence in permitting defendants' counsel not only to contradict his own witness but to boldly and openly *impeach him*, not merely on the theory of surprise to explain why defendant called him, but for the direct purpose of *impeaching him*. I thought, in the interest of right and justice to all, that the rules of evidence should be utterly disregarded for this purpose—and they were. I feel entirely confident that even if the sixth prayer had been granted, the result would have been the same, and that it ought to have been the same. The defendant is perhaps fortunate that the case was tried before that particular jury on duty those three weeks. That jury had been noted for the conservatism of its verdicts as to amounts when rendered for plaintiffs. Judgment for greater amount might well have been rendered without being excessive. Had there been a judgment for defendant on the evidence, it might well have been set aside on motion for new trial as against the weight of the evidence.

Technically and academically considered, in the light of a careful examination of the authorities on a very close question of law, I am free to admit that I made a technical error, as I now view it, on my ruling in refusing the defendant's sixth prayer, notwithstanding numerous cases which I will later cite in support of such ruling, none of which entirely satisfies my mind as being logically correct or closely reasoned, in accordance with the accepted legal principle (the right and justice of which I do not concede).

On the whole, I think there was a fair trial, a just conclusion and a moderate, but substantial, verdict. For which reasons, I am unwilling to set aside the verdict because of an admitted technical error. I prefer to leave the responsibility to the Court of Appeals of saying whether the technical error, if they so find, was so substantial in character as to warrant reversal and remanding for a new trial.

Defendant's authorities considered:

1. Oloughlin vs. Mackey, 169 N. Y. 35.

In this case a man was engaged as a follow-up man of trucks intending to secure bills of lading for the driver of the trucks, usually going on street cars and was not a licensed driver. Sometimes he used a horse and wagon. On the occasion in question he met Mr. S., who had borrowed a Ford car, and while he sent Mr. S. on an errand regarding the bills of lading, he drove the Ford car on the pavement, injuring a pedestrian. Held, on the facts, that the master was not liable. It is true on page 836 the Court used the following language:

"When the servant is engaged in procuring or carrying through something within the scope of his employment, and while so engaged adopts means reasonably directed to that end, which results in injury to another, the master is answerable for the consequences, but the means here adopted were not reasonable, namely, the use of an auto by one not a licensed chauffeur, was not the adoption of such means as would bind the master."

The Court emphasized the fact in this case that the master did not own the Ford car, though I do not think that would of itself be a controlling fact.

(Mass. case, 1924) McDonough vs. Zeozella, 142 N. E. 831.

A sewerage contractor had one "X" in his general employ (but not as an auto driver). About 3 P. M. contractor told him to go to R. to get some lanterns, that it was getting dark and he needed them. The distance was about fifteen minutes' walk; he did not tell him to take the auto, which was some 700 feet away. He had never driven defendant's auto, but took it out on this occasion. Held, master is not liable

on these facts for injuries to third persons during the use.

But on page 833 the Court said:

"There is use of defendant's auto by his servant during the regular hours of work in the prosecution of his business. We are of the opinion that from these facts the inference might be drawn, under the circumstances here disclosed, that such use was impliedly authorized or assented to by the defendant, notwithstanding the denial of the defendant and his servant. Whether such inference ought to be drawn was a matter for the jury to determine." The fact that the use of the auto was in the owner's business distinguishes it from a long line of cases there cited.

In the recently decided Hendler Creamery vs. Miller (Maryland case), 138 Atl., p. 1, there is strong dicta as to the views of the writer of that opinion in support of what seems to me to be the principle involved in the cases above cited from and which is the subject of the sixth prayer.

Another case cited by counsel for defendant is the case of Seaboyer vs. Davis, 138 N. E. 538. The person occasioning the injury was a helper on a truck; he was not the driver, nor was he a licensed driver, but only engaged to watch and guard the contents of the truck. He undertook to drive the truck out of the way in order to park the same so as to let another truck pass. Held, on the facts, not to be within his authority, and that the master was not liable.

Stone vs. Commonwealth Coal Co. (Mass., 1927), 156 N. E., p. 737.

Held on the facts of this case that driver was not in the scope or path of work for which he was employed. Held to be within the rule laid down in the case of a footman not binding his master by driving in the place of the coachman (without authority implied).

Wilson vs. Pa. R. R. (1899), 63 N. J. L. 385, also 43 Atl. 94. Plaintiff was struck by a wagon of the Adams Express Co. driven by a mail carrier employed by Pennsylvania Railroad to carry mail. The mail driver was only authorized to walk or to use a pushcart. No proof of any authority to use a wagon causing the injury. Held, plaintiff should be non-suited.

As stated heretofore, authorities are not entirely wanting to the contrary.

2. Blashfield's Cyc. of Auto. Law, Ch. 60, Sec. 9 (p. 1375):

Sec. 9. Liability as dependent on right of servant to use automobile in performing services:

"The use of an automobile by a servant, contrary to the directions of his employer, to accomplish something within the scope of his employment, will not carry the servant outside of such scope."

Thus an employee of a public garage, having authority to go to an electric company to get charged batteries, is acting within the scope of his authority in so doing, though he uses, against orders, an automobile kept in the garage, subject to the owner's call, to get such batteries instead of walking as he is supposed to do.

Gibson vs. Dupree, 144 Pac. 1133, 26 Colo. App. 324.

So a master is liable for the negligent acts of his servant in driving an automobile in going after automobile supplies, the obtaining of which is the duty of the servant, although the master has not authorized him to take the automobile for such purpose.

Cooper vs. Knight (Tex. Civ. App.), 147 S. W. 349.

18 R. C. L., Sec. 254 (p. 796):

"Where a servant steps aside from the master's business and does an act not connected with the business, which is hurtful to another, manifestly the master is not liable for such act, for the reason that having left the employer's business, the relation of master and servant did not exist as to the wrongful act"; "but if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the employer is liable."

Pittsburg, C. & St. L. Ry. Co. vs. Kirk, 102 Ind. 399, 1 N. E. 849, 52 Amer. Rep. 675.

In above case the Court said, at 850 (1 N. E.):

"The inquiry in hand embraces the following considerations: (1) Was the servant at the time engaged in prosecuting the business of the master, with authority, either express or implied, to accomplish in some manner an end then in view; and did the wrongful or injurious act have relation to the consummation of such end? (2) Was the

manner chosen by the servant, resulting in the injury complained of, so far incident to the end in view as that it was reasonably, under the circumstances, designed for its attainment, or was it for some purpose merely personal to the servant, having no relation or fitness to the accomplishment of the business in which he was engaged? Whether a servant in a given case was acting within the scope of his employment, in pursuance of his line of duty, or on his own responsibility, in pursuit of his own pleasure or convenience, must usually depend upon the facts in such case. To undertake to lay down a general rule applicable to all cases would not only be difficult but impossible. But we think this much may be said: Where a servant is engaged in accomplishing an end which is within the scope of his employment, and while so engaged adopt means, reasonably intended and directed to the end, which result in injury to another, the master is answerable for the consequences, regardless of the motives which induced the adoption of the means. And this, too, even though the means employed were outside of his authority, and against the express orders of the master." Thomp. Negl. 889, Sec. 6; Wood, Mast. & Serv. 593-596.

18 R. C. L., Sec. 254:

"Responsibility is not limited to those acts which promote the objects of the employment. Expressions equivalent to 'scope of employment' are line of duty, in the employer's service, course of the service, transaction of the employer's business, furtherance of the employer's interests, protection of employer's property and the like. The general idea is that the employee at the time of doing the wrongful act, in order to fix liability on the employer, must have been acting in behalf of the latter and not on his own account." Citing cases.

I do not choose to delude myself or counsel with the belief that I think the cases cited fully sustain the text of Blashfield's Cyc. of Automobile Law in support of the text of which most of them are cited. A careful reading of, and close reasoning from, those cases warrant the following conclusion: That both in Gibson vs. Dupree case (144 Pac. 1133) and Cooper vs. Knight 147 S. W. 349), the drivers of the cars at the time of the accident, were men *engaged to drive cars*, both worked for garages, one having the duty to take cars, on call, to patrons of the garage, and to attend to recharging of batteries taking them back and forth to the battery place, where it was his duty to walk, but the battery being particularly heavy, he, without authority took the car for that purpose. The other case was the same in principle, employed to drive cars and do other things. He went for "chains" for patrons of the garage, took the car where he should have walked. They can be loosely accepted as authorities, or adjudications, to sustain my conclusions in this case. They do not, however, satisfy my mind as to the logic of the situation. They are still in the class of *drivers of cars*, authorized as such, but not authorized to do so at the *particular time*. The old English case best illustrates the legal distinction; the case of the *footman* not being in the *class* of the *coachman*. I therefore prefer to put my decision squarely on the ground where it belongs. That *right and justice were done in the trial of the case, and that technical error on the law was committed,* and that if the Court of Appeals thinks it was sufficiently substantial as to warrant reversal, the plaintiff must assume that hazard if she wishes to maintain a verdict which I think *was right and proper.*

Motion for new trial overruled.