The Citizens' Street Railroad Company *v.* Robbins, Administrator.

No. 17,296.

# THE CITIZENS' STREET RAILROAD COMPANY *v.* ROBBINS, ADMINISTRATOR.

CONTRACT.— *Deed.—Assumption of Liability.— Maximum Limit.— Railroad.*— A stipulation in a deed of the property of a railroad company to another company, "subject to a certain liability in no event to exceed $6,000, growing out of a specified suit," constitutes an assumption only of $6,000 of the claim if the liability exceed that amount, and not of the full liability of the grantor company in such suit.

DAMAGES.—*Measure Of.—Conversion of Corporate Stock.*—The measure of damages for the conversion of corporate stock is the highest intermediate value between the time of conversion and a reasonable time after the owner has received notice of the conversion, to enable him to replace the stock,—especially where the conversion is not willful and fraudulent, and is without benefit to the party charged therewith.

SAME.—*Conversion of Corporate Stock.—Knowledge Of.—Time for Valuation.*—The knowledge of conversion of corporate stock for the purpose of fixing a time for its valuation in the assessment of damages, should be that of some one charged with the duty to act, and not interested by reason of participating in the original wrong.

SAME.—*Conversion.—Dividends Earned on Stock before Conversion.* —Dividends earned upon corporate stock before the date of the technical conversion should, with interest upon them, constitute an element of the damages for the conversion, but those following both the actual and technical conversion cannot be allowed.

SAME.—*Measure Of.—Stock of Corporation.—Conversion.*—Where stock of a corporation has been converted, the measure of damages is the highest intermediate value of the stock between the time of conversion, and reasonable time after the owner has received notice of the conversion.

SAME.—*Corporate Stock.—Conversion Of.—Decedent's Estate.—Time for Valuation.*—If corporate stock belonging to an estate has been converted, the knowledge of such conversion, for the purpose of fixing a time for the valuation of such stock, should be that of some one who is charged with a duty to act and who has not participated in the original wrong.

The Citizens' Street Railroad Company *v.* Robbins, Administrator.

CONVERSION.—*Corporate Stock.*— *Time for Valuation.*— *Notice.*—
*Administrator de Bonis Non.*—Where an administrator *de bonis
non*, in an action against the administratrix and a corporation for
the conversion of stock owned by the estate, the administratrix
having been removed November 21, 1881, made demand for the
stock December 21, 1881, and brought suit January 5, 1882, De-
cember 2, 1881, was a reasonable time within which to charge
plaintiff with knowledge of the conversion for the purpose of fix-
ing a time for the valuation of the stock converted.

SAME.—*Recovery.*—*Administrator de Bonis Non.*—In such case the
interest of the administratrix, if any, in the stock converted, is not
recoverable by the administrator *de bonis non.*

SAME.—*Measure of Damages.*—*Dividends.*—*Interest.*—Neither divi-
dends accruing nor interest on dividends which have accrued after
conversion of stock, can be allowed as elements of damage.

PLEADING. —*Complaint.*—*Theory.*—*To Charge Old Railroad Com-
pany with Stock and Extend Charge to New Company.*—*Fraud-
ulent Conveyance.*—That the theory of a complaint against a rail-
road company is not to set aside a conveyance of stock as fraud-
ulent, but to charge the old company with such stock and dividends
accrued thereon, and to extend such charge to the new company
which has succeeded to the property rights of the old company, see
opinion.

From the Marion Superior Court.

*W. H. H. Miller, F. Winter* and *J. B. Elam,* for
appellant.

*J. M. Butler, S. M. Shepard, R. N. Lamb* and *R.
Hill,* for appellee.

HACKNEY, C. J.—This suit was instituted by the ap-
pellee, Charles F. Robbins, as administrator *de bonis
non* of the estate of Henry H. Catherwood, deceased,
and was originally against the Citizens' Street Rail-
way Company and Tom L. Johnson. With the parties
as stated, the suit was tried and resulted in a decree
against the defendants therein, from which decree
there was an appeal to this court, wherein there was a
reversal as to said Johnson and an affirmance as to said
street railway company. See *Citizens' St. R. W. Co.*

v. *Robbins, Admr.*, 128 Ind. 449 (12 L. R. A. 498).    The basis of the cause of action then and now involved was the fact that in the year 1872 said Catherwood died intestate, the owner of three hundred and eight shares of the capital stock of said railway company, of the par value of $30,800.00, and of the actual value, at that time, of $4,520.00, and that his widow, then acting as administratrix of his estate, made to one Carlisle a void sale of said stock; that the purchaser procured a transfer of the certificates of said stock to be made to him by said railway company, said company being chargeable with notice of the invalidity of said sale.    Originally Tom L. Johnson was sought to be made liable as the purchaser of said stock from Carlisle.    It was held by this court that the sale by the administratrix was void; that the Citizens' Street Railway Company was liable and that Johnson was not liable to the estate.

Upon the return of the case to the trial court the issues were changed by a dismissal as to Johnson, and, by way of supplemental complaint, bringing in as a defendant the appellant, The Citizens' Street Railroad Company.

The theory of the cause of action as stated in each of the paragraphs of complaint, as amended and pending when said supplemental complaint was filed, was to recover said stock in specie, and the amount of the dividends declared upon and accruing to said stock. The supplemental complaint alleged that "on the 24th day of April, 1888, the Citizens' Street Railway Company, being at the time indebted to this plaintiff, as is averred and shown in the original complaint in this cause, did make, execute and deliver to said defendant, The Citizens' Street Railroad Company, a deed of conveyance, selling, assigning," etc., describing all of the

property of every character belonging to the railway company. The pleading then continues:

"Plaintiff further says that the said conveyance was made without any consideration whatever therefor, to said grantor, and without any authority therefor; that said conveyance left said grantor without any means or property subject to execution, and without sufficient property to pay the claim of this plaintiff.

"Plaintiff further says that the claim of this plaintiff was mentioned and referred to in said deed of conveyance, said property being conveyed, as the language of said deed reads, 'subject to a certain liability, in no event to exceed $6,000.00, growing out of a suit by the administrator *de bonis non* of *Henry H. Catherwood*, deceased, v. *Tom L. Johnson and others;* particulars of said liability being fixed by a contract entered into as of this date, between Tom L. Johnson and said Citizens' Street Railroad Company.' But plaintiff says that the amount due and owing to him, from said Citizens' Street Railroad Company,' at time of the said conveyance, and at the present time, largely exceed $6,000.00, and in fact amounts to more than $100,000.00; that said conveyance was constructively fraudulent, as against the rights of this plaintiff; that said property and assets of said Citizens' Railway Company, so transferred to said Citizens' Street Railroad Company, were chargeable with the payment of plaintiff's whole claim, and the value of said assets and property so received by said conveyance by said Citizens' Street Railroad Company largely exceeded in value plaintiff's claim, and were in fact worth one million, two hundred thousand dollars ($1,200,000.00). Plaintiff further says, as he is informed and believes, that said Tom L. Johnson, in said contract in writing, did undertake and agree and

bound himself to pay the claim of this plaintiff, or so much thereof as might be over and above said $6,000.00. Plaintiff is unable to attach a copy of said contract as an 'Exhibit' hereto, but will undertake to do so, whenever a copy of the same can be procured from the defendants. Plaintiff says that said contract of said Tom L. Johnson with said Citizens' Street Railroad Company, to pay the plaintiff's claim, ought, in equity, to enure to the benefit of this plaintiff, the consideration for said contract, among other things, being the purchase of the stock of said Tom L. Johnson in said Citizens' Street Railway Company by John C. Shaffer.

"Wherefore, plaintiff prays that the said conveyance to said Citizens' Street Railroad Company of the said property above described, be set aside, and said property be subjected by this court to the payment of this said plaintiff's claim; that the plaintiff be subrogated to all of the rights and benefits growing out of the said contract of the said Tom L. Johnson, assuming and agreeing to pay plaintiff's claim herein.

"Plaintiff further says that, during the pendency of this suit, dividends to a large amount, to-wit: $100,000.00, have been declared and paid on said stock of the said Henry H. Catherwood, deceased, and the same have been received and paid to the said Tom L. Johnson.

"Wherefore, plaintiff prays judgment for $100,000, and all other proper relief."

The appellant's learned counsel insist that the allegations of the supplemental complaint, which become a part of the original paragraphs of complaint severally, give to the suit the theory of a proceeding to set aside a conveyance as fraudulent. It is true that it contains allegations proper in such a proceeding; that the conveyance was without consideration and left the

grantor without means to pay its debts, and the prayer that the conveyance be set aside. These allegations, however, do not consist with the further allegations of an assumption by the purchasing company, both by the deed and by a contract, of at least $6,000.00 of the debts of the selling company. These alleged assumptions destroy the effect of the allegations of no consideration which gave to the pleading the only possible support upon the appellant's contention. There are no allegations of a combined purpose or intention to defraud the appellee or other creditors. The allegation "That said conveyance was constructively fraudulent as against the rights of this plaintiff," was a conclusion and not a statement of fact. It was a conclusion at variance with the rule that fraud is a question of fact. The allegations of the supplemental complaint must be considered in connection with those of the paragraphs severally of the original complaint. So considering them we are impressed that they were not drawn with a very definite and clearly settled single theory, but we feel satisfied that the principal and most definite theory of the suit was to charge the Citizens' Street Railway Company, primarily, with the stock and its dividends and to extend that charge to the Citizens' Street Railroad Company because of its having succeeded to the property and rights of the railway company, and, in equity, assumed the existing liabilities of that company.

The allegations that the conveyance was made without consideration, and left the railway company without means to pay the appellee's claim; that the railroad company took the conveyance subject to the liability for appellee's claim, not, however, to exceed $6,000.00, as stipulated in the deed, were facts pertinent to the theory that the railroad company had succeeded to all of the property and rights of the rail-

way company and with knowledge of the appellee's claim. The allegation of no consideration, so far as it would support the theory of a fraudulent sale, is neutralized by the allegation of an express assumption of $6,000.00. The allegation that the sale was constructively fraudulent is conceded to give no force to the insistence that the theory of the action is to set aside the conveyance as fraudulent. It is a conclusion, and is contrary to the statutory rule that fraud is a question of fact. Upon the possible theory that it was designed to plead fraud, though there was some consideration for the sale, the failure to allege any fraudulent intent in which both companies participated would defeat that theory.

We are not impressed with the contention of counsel for the appellee that there is any right of recovery as upon an express assumption, by the deed, of the appellee's entire claim. The deed would be the basis of the railroad company's liability, and it is not made a part of the pleading, and, if it were, we cannot agree that it assumes a sum in excess of $6,000.00. On the contrary, we have no doubt of its effect, so far as the parties to it are concerned, to limit the liability of the company to $6,000.00. Nor do we concur in the proposition that under the complaint there is any right of recovery, as upon an express contract between Johnson and Shaffer, or Johnson and the railroad company. The terms of that contract are not pleaded, and Johnson, whose liability by that contract is alleged in general terms, is not a party to this action, and just how the appellee may be subrogated to the rights of the railroad company in a liability against Johnson, under this complaint, we are not advised by counsel. Another allegation of the supplemental complaint, that seems to have been made without reference to

any of the theories suggested, is that general statement that the sale was made without authority.

The sufficiency of the complaint is not questioned, and we do not pass upon it, though we think the theory we have assigned to it is suggested, if not entirely supported, by the following decisions : *Louisville, etc., R. W. Co.* v. *Boney,* 117 Ind. 501 (3 L. R. A. 435); *Cleveland, etc., R. W. Co.* v. *Prewitt,* 134 Ind. 557 ; *Chicago, etc., R. W. Co.* v. *Hall,* 135 Ind. 91 (23 L. R. A. 231); *Midland R. W. Co.* v. *Galey,* 141 Ind. 483.

The issue tendered by the complaint was met by a general denial, and a trial resulted in a special finding of fact, with conclusions of law stated and a judgment in favor of the appellee for $37,220.00.

The facts specially found covered fairly the ownership of the stock by Catherwood, the sale by the administratrix, the circumstances rendering the sale invalid and fixing a liability against the Citizens' Street Railway Company as set forth in the case of *Citizens' Street R. W. Co.* v. *Robbins, supra.* It was found that the sale to Carlisle was on July 16, 1873; that the stock passed from him to an innocent purchaser February 15, 1878; that a demand was made upon the railway company for the reissue of said stock to the estate November 21, 1881; that the value of the stock on December 2, 1881, at the time this suit was instituted, was 40 cents on the dollar; that, between November 1, 1879 and April 25, 1888, dividends had been declared and paid upon the stock of the railway company, $16,016.00 of which were declared and paid upon the stock in question, and that on the 24th day of April, 1888, the railroad company succeeded to the property of the railway company with knowledge of the appellee's claim and without leaving the latter company means or property to pay said claim; that "it

was, in and by the terms of said deed and as a part of the consideration for such transfer, stipulated that said railroad company was to pay and discharge any judgment which this plaintiff might recover herein; but, for its protection, it took from Tom L. Johnson, one of the stockholders of said railway company, a contract requiring him, the said Johnson, to indemnify said railroad company against the amount of the judgment herein in excess of $6,000.00." It is found, in general terms, that the railroad company assumed all of the obligations of the railway company. There are also numerous facts stated, with reference to the meeting of the stockholders of the railway company, at which the sale was made, but such facts were manifestly not pertinent to the issues. It was found, finally, that a claim for $10.00, with the costs of administration, has been and is pending against the estate.

The conclusions of law stated are that the sale of the stock was void and its transfer by the company wrongful; that the appellee was entitled to recover "the value of the stock on the 2d day of December, 1881, and dividends and interest thereon," and that the railroad company was liable for the loss occasioned by such sale and transfer of said stock in the sum of $37,220.00.

Appellee's learned counsel have argued that the stipulation, in the deed to the railroad company, "subject to a certain liability, in no event to exceed six thousand ($6,000.00), growing out of a suit, now pending in the Supreme Court of Indiana, by the administrator of one *Catherwood* v. *Tom L. Johnson and the Citizens' Street Railway Company*," was an assumption of the full liability of said railway company to said estate, as if the words "in no event to exceed $6,000.00" had not been written in the stipulation. This argument is

supported by the proposition that the companies possessed no power to limit the liability to $6,000.00. This position necessarily implies that the affirmative words of the stipulation are effective notwithstanding the negative words or those which specify the maximum assumption. · We have already indicated our opinion that there is no issue in this case authorizing recovery as upon an express assumption of the amount of the appellee's claim, and the reasons for that conclusion have been stated. If we were in error as to the issue, we should not incline to the contention of counsel in their construction of this stipulation. As an affirmative obligation, it can only be construed as an assumption of $6,000.00 of the claim if the liability shall be found to be so much.

The judgment of the trial court must find support from other findings than that construing this stipulation, or it must fail.

One contention of the appellants' learned counsel is that in any view of the findings the judgment is excessive. Including the columns of "Interest" and "Totals," the special finding embraces the following table of dividends declared and paid by the railway company upon the amount of stock claimed by the Catherwood estate:

| DATE. | PER CENT. | AMOUNT. | INTEREST. | TOTALS. |
|---|---|---|---|---|
| Nov.  1, 1879, | 1 | $   308.00 | $246.80 | $   554.80 |
| May  1, 1880, | 1 | 308.00 | 237.56 | 545.56 |
| Nov.  1,   ” | 4 | 1,232.00 | 913.32 | 2,145.32 |
| May  1, 1881, | 2 | 616.00 | 438.18 | 1,054.18 |
| Aug.  1, 1881, | 2 | ·616.00 | 428.94 | 1,044.94 |
| Nov.  1,   ” | 2 | 616.00 | 419.70 | 1,035.70 |
| Feb.  1, 1882, | 2 | 616.00 | 410.46 | 1,026.46 |
| May  1,   ” | 2 | 616.00 | 401.22 | 1,017.22 |
| Aug.  1,   ” | 2 | 616.00 | 391.98 | 1,007.98 |
| Nov.  1,   ” | 2 | 616.00 | 382.74 | 998.74 |

The Citizens' Street Railroad Company *v.* Robbins, Administrator.

| DATE | PER CENT. | AMOUNT. | INTEREST. | TOTALS. |
|---|---|---|---|---|
| Feb. 1, 1883, | 2 | 616.00 | 373.50 | 989.50 |
| May 1, " | 2 | 616.00 | 364.26 | 980.26 |
| Aug. 1, " | 2 | 616.00 | 355.02 | 971.02 |
| Nov. 1, " | 2 | 616.00 | 345.78 | 961.78 |
| Feb. 1, 1884, | 2 | 616.00 | 336.54 | 952.54 |
| May 1, " | 2 | 616.00 | 327.30 | 943.30 |
| Aug. 1, " | 2 | 616.00 | 318.06 | 934.06 |
| Nov. 1, " | 2 | 616.00 | 308.82 | 924.82 |
| Feb, 1, 1885, | 2 | 616.00 | 299.58 | 915.58 |
| May 1, " | 1 | 308.00 | 145.16 | 453.16 |
| Aug. 1, " | 1 | 308.00 | 140.54 | 448.54 |
| Nov. 1, " | 1 | 308.00 | 135.92 | 443.92 |
| Feb. 1, 1886, | 1 | 308.00 | 131.30 | 439.30 |
| May 1, " | 1 | 308.00 | 126.68 | 434.68 |
| Aug. 1, " | 1 | 308.00 | 122.06 | 430.06 |
| Nov. 1, " | 1 | 308.00 | 117.34 | 425.34 |
| Feb. 1, 1887, | 1 | 308.00 | 112.72 | 420.72 |
| May 1, " | 1 | 308.00 | 107.10 | 415.10 |
| Aug. 1, " | 1 | 308.00 | 102.48 | 410.48 |
| Nov. 1, " | 1 | 308.00 | 97.86 | 405.86 |
| Feb. 1, 1888, | 1.5 | 462.00 | 141.51 | 603.51 |
| Apr. 25, " | 1.5 | 462.00 | 135.08 | 597.08 |
| | | $16.016 | $8,915.51 | $24,931.51 |

The columns of interest and totals are supplied by the appellee's counsel.

The finding of the court was made March 9, 1893, and the calculations of interest upon the several dividends are from the dates of the dividends respectively to that date.

Upon the theory that the court allowed for the stock 40 per cent. of the face or par value thereof, and that is the only conclusion possible under the findings, that item would be $12,320.00. At this point counsel

differ widely in their views as to what additional items entered into the judgment, those for appellant insisting that they were:  Interest on stock since Dec. 2, 1881, $8,330.00; dividends since that date, $12,320.00, and interest on such dividends to the trial, $4,250.00. The objection to this theory is that the amount of estimated interest on such dividends is insufficient by nearly $2,000.00, and, adding these various items, this interest correctly stated, would aggregate $39,191.00, or a sum in excess of the judgment.

If we deduct the item of interest on the stock ($8,330.00) the balance of $30,871.00 would fall far short of the judgment.  The value of the stock on December 2, 1881, with the dividends then accrued and interest on both to the date of the trial would amount to but $26,775.00.  If, however, we add to the value of the stock in December, 1881, the dividends accruing from the transfer of the stock to Carlisle to the sale of the property to the railroad company, with interest on such dividends from the date of each dividend to the time of the trial, the sum is practically $37,220.00, it is $31.51 in excess of that sum.  While the final conclusion of the court is not clearly stated, we are satisfied that it was intended to and the judgment did allow for the value of the stock on December 2, 1881....................................$12,320.00

All dividends after the transfer of the stock to Carlisle and before the sale to the railroad company...................... 16,016.00

Interest on dividends from their accrual to the trial............................. 8,884.00

$37,220.00

Was this the correct measure of damages?  That it is proper to allow all dividends earned before the

conversion and interest on the sum to the time of the trial we think is not questionable. When did the conversion take place in the transaction here complained of? The demand for a reissue of the stock was on December 2, 1881, but a demand does not necessarily fix the time of conversion. That a demand is made and is refused is but evidence of a conversion. There is no conflict of authority upon this proposition. *Robinson* v. *Skipworth*, 23 Ind. 311; *Pribble* v. *Kent*, 10 Ind. 325; *Coffin* v. *Anderson*, 4 Blackf. 395; *Cunningham* v. *Baker*, 84 Ind. 597; *Robinson* v. *Shatzley*, 75 Ind. 461; *Snyder* v. *Baber*, 74 Ind. 47.

That there was an actual conversion in this case when the stock passed into the hands of an innocent purchaser and beyond the reach of both the estate and the railway company, would seem to be self-evident. This happened, as found by the court specially, on the 15th day of February, 1878. This we do not regard as conclusive as to the time when the valuation shall be placed upon the converted stock, but as the time to which earned dividends may be allowed without doubt, and from which to a subsequent period, to be ascertained, the stock has attained the highest market price. The first declared dividend, as found by the court, was on November 1, 1879, more than a year and a half after the actual conversion. At what time shall the valuation be fixed upon the stock converted? With relation to ordinary commodities or articles not subject to fluctuating valuations like stocks, the valuation is usually made as at the period of conversion. That rule, however, is not, in our judgment, applied generally where the conversion is of stocks, bonds or securities of fluctuating values. There are conflicting decisions as to whether the valuation shall be that prevailing at the time of the actual conversion, or the highest price between the conversion and the demand,

or the highest price between the conversion and the trial, or the highest intermediate value between the time of conversion and a reasonable time after the owner has received notice of the conversion to enable him to replace the stock. The latter we believe to be the correct rule, and especially is this true where the act of conversion is not willful and fraudulent, but where, as here, it is without benefit to the party charged with conversion, but is from a mere omission to carefully observe the proceedings under which the purchase of the stock was claimed. This rule was adopted in *Galigher* v. *Jones*, 129 U, S. 193; *Baker* v. *Drake*, 66 N. Y. 518; *Gruman* v. *Smith*, 81 N. Y. 25; *Colt* v. *Owens*, 90 N. Y. 368; *Wright* v. *Bank of the Metropolis*, 110 N. Y. 237 (1 L. R. A. 289.

To adopt the value as existing at the time of actual conversion would enable the converting holder to make the market for the owner and deprive him of his stock, whether he so wills or not. To adopt the highest value between the time of actual conversion and the trial is to encourage the owner to delay and speculate upon the chances of higher markets without assuming the chances of lower markets. If he know of the conversion and have a reasonable time in which to make himself whole by resorting to the markets, his loss is that which his stock should have yielded to that time and the value of the stock at that time, for he may then assume his position as a stockholder at a value to be charged to the defendant.

This being true, it may be settled as a correlative of this proposition that the time when the converted stock so takes the value chargeable to the defendant is the time when a technical conversion takes place. The application of this rule to the present case involves the peculiar difficulty arising from the fact that the

interests of an estate are and were involved at the
time of the actual conversion, and that the adminis-
tratrix of the estate was the principal actor in the
conversion and had knowledge of it from the first step
to the time of the actual conversion.   If the rule in
question were given strict enforcement against the
estate, the technical conversion would be held to have
been as early as February 15, 1878, and before divi-
dends were earned.  Since the administratrix and the
railway company were participants in the conversion,
and since it is the interest of the estate to which
equity would look, as against them both, it would
seem that the knowledge of such conversion, for the
purpose of fixing a time for the valuation of the stock,
should be that of some one charged with a duty to act,
and not interested by reason of participating in the
original wrong.   The finding of the court is that the
administratrix was removed and Robbins was ap-
pointed to administer upon the estate on the 21st day
of November, 1881; that he made the demand for the
stock December 2, 1881, and brought this suit January
5, 1882.  Upon these facts, in our opinion, there could
be no question that the 2d of December, 1881, was
within a reasonable time from the period when it was
possible for the administrator to know of the conver-
sion.   Having established that date as the time of the
technical conversion, there was no error in fixing the
value of the stock as of that date.   But to that item,
as we have seen, the court added all of the dividends
prior to and succeeding that date.   As to such divi-
dends as were earned before the date of the technical
conversion, we have no doubt they should have
constituted, with the interest upon them, an
element of the damages.   As to such as fol-
lowed both the actual and technical conver-
sion, there should have been neither principal nor

interest allowed. At the date of the technical conversion, the value of the stock was established and thus the loss was reduced to a cash basis and supplied the principal element of recovery; the stock had, long prior to that date, passed beyond the possibility of return to the estate, and its earning capacity had, so far as the estate was concerned, ceased; indeed, its dividends were continued beyond the actual conversion only because the technical conversion followed that event. The loss of the estate was, therefore, at the date of the suit, reduced to the then existing value of the stock, the dividends then accrued and the interest on such dividends. That loss represented the then existing liability of the railway company, and with the interest accruing thereon to the date of the trial should have been the amount of the judgment:

That is to say: Stock...................$12,320.00
Dividends to that date...................  3,696.00
Interest on stock from Dec. 2, 1881, to the
    trial .................................  8,317.50
Interest on dividends from the date of accrual to the date of the trial...........  2,684.50
                                            _____
    Total ...............................$27,018.00

These figures may vary slightly from the correct amount for which the judgment should have been given. We do not state them as exact, since we have concluded that judgment should not be directed to be entered upon the special finding. This conclusion is reached from the fact, as stated in the finding, that Mrs. Catherwood, at the time of the transfer of the stock to Carlisle, executed to him an assignment of her individual interest in the stock. This interest should not be recoverable to her benefit, even through the instrumentality of the estate and its administra-

tion. That proposition is here urged to reduce the judgment in favor of the estate and we should accept that contention if we felt that the question were duly presented by the record. There is no pleading raising that question, and the only finding of fact supplying the basis for that conclusion is that a claim for $10.00 is pending against the estate, and the costs of administration are unpaid. The suit is primarily in the interest of the estate and it should be made to appear that some part of the recovery would be distributable to Mrs. Catherwood and would not be required to pay the claims of the estate. That there are no claims, valid and not barred by the statute of limitations, we think is not presented for decision.

The judgment of the trial court is reversed, with instructions to grant a new trial.

Filed February 11, 1896; petition for rehearing overruled April 16, 1896.

### ON MOTION TO MODIFY MANDATE.

*Per Curiam*—Lucy D. Phelps, the widow of Henry H. Catherwood, deceased, and formerly administratrix of the estate of said decedent, comes into this court and files her relinquishment to the appellant, of all interest in the judgment herein and the proceeds thereof. Comes also appellee, administrator, and asks to remit all of the judgment by him recovered, excepting the sum of $18,012.00, which is to constitute the recovery by him on behalf of said estate, freed from any claim upon or interest in such recovery by said widow or her assignee of the stock in question. Said relinquishment and the offer of said administrator are accepted, and the judgment of the lower court is affirmed in the sum of $18,012.00, upon the entry, within twenty days from this date, of a remittiture by said administrator, with the consent of the court having the settlement of said Catherwood estate, of all the judgment recovered, excepting the sum of $18,012.00.

Filed April 16, 1896.