## Ogle et al. v. Hudson.

[No. 4,269.    Filed March 10, 1903.]

PRINCIPAL AND AGENT.—*Scope of Agent's Authority.*—*Surface-Water.*—*Drains.*—*Damages.*—The agent of a landlord had general supervision over a farm of his principal, and was specially directed to let the water off of his land when necessary. The agent and a tenant cut a ditch through a highway so that water which had accumulated above the highway flowed upon and destroyed the growing corn of an adjoining landowner. *Held*, that the agent acted within the scope of his authority, and that the landlord was liable for the damages so caused.

From Greene Circuit Court; *O. B. Harris*, Judge.

Action by William Hudson against Alfred M. Ogle and others. From a judgment for plaintiff, defendant Ogle appeals. *Affirmed.*

*C. E. Davis, C. E. Barrett, E. A. Brown, Ralph Bamberger* and *Isidore Feibleman*, for appellants.
*W. L. Cavins* and *C. E. Henderson*, for appellee.

WILEY, J.—Appellee sued appellants jointly to recover damages alleged to have been done his growing corn by turning on to his premises a large body of accumulated surface-water. A judgment was rendered against appellant Ogle alone, and he joined his codefendants as appellants,

and gave the required notice to them of the appeal. Appellant relies for a reversal upon the action of the court in overruling his motion for a new trial, and the only question presented in argument is the sufficiency of the evidence to support the verdict, and that the verdict is contrary to law.

The evidence shows that appellee was a tenant of one Cooper, and had rented from him certain lands to cultivate in corn. Appellant Ogle owned land adjoining, being separated from it by a gravel road. The land occupied by appellee was on the south side of this road, and appellant's land on the north side. The natural flow of the water was from the north toward the south. Appellant's land was rented to appellant Arthur, who was farming it. The general lay of these lands was low, and had formerly been known as Goose pond. By a system of drainage they had been reduced to a state of cultivation. The gravel road ran east and west, and between appellant's land and that occupied by appellee. The grade of the road was about two and one-half feet high. There was no cut or culvert in the road, prior to the time of the injury complained of, for the water to pass over or through. The land had been tiled, and some of these tiles passed under the road. Appellant's land gradually inclined from the road northward. On or about August 8, 1899, there was a heavy rain, and a large quantity of water accumulated on the Ogle land, and by backing up against the road covered several acres, which were also planted in corn. The jury were justified in reaching the conclusion, although there was some conflict on the point, that on the forenoon of August 9, about nine o'clock, there was practically no water on appellee's land, while one witness testified that sixty acres of the Ogle land was under water. Appellant Gageby was Ogle's agent, and as such had general supervision of his farms, including the land occupied by Arthur. As such agent it became his duty to look after the collection of rents and to see that tenants

"lived up to their rental contracts." Appellant Ogle lived at the time in Indianapolis, and was not present when the opening was cut through the road, and did not know of it till some time afterwards. It appears in evidence that Gageby had been directed by appellant Ogle that if water got on his land he was to let it off if necessary. Appellant's tenant finding a large quantity of water on his land sent for Gageby, and when he came, under his direction, the ditch or opening through the gravel road was cut. This ditch was first cut about twenty inches wide and twenty inches deep, and later in the day it was cut deeper by Gageby. The water that had collected on appellant's land passed through this cut in the road grade and flowed onto the land occupied by appellee, and spread over his corn. The corn was ready to silk and tassel. Water thus accumulated over many acres of appellee's corn to considerable depth, and destroyed it. The evidence further shows that Arthur was anxious to have the ditch cut through the road so as to get the water off his corn and thus save it from drowning. There is also some evidence which tends to show that there was some water on appellee's corn before the cut through the road was made, and also that the overflow of his land was not due to the water that came off of appellant's land through the cut in the road, but from other sources. The evidence as to the direct cause of the overflow on appellee's land is conflicting, but there is ample evidence upon which the jury could have and doubtless did reach the conclusion that it was caused by letting the accumulated water on appellant's land through the cut in the road.

It becomes a question of law, under the view that the jury took of the evidence, as to whether there was actionable wrong in Gageby cutting the ditch or opening in the road, thus allowing the water to flow onto appellee's land, for which appellant can be held liable.

It is urged by counsel that Gageby was acting for Arthur, the tenant, and not for appellant. This position is not

supported by the evidence. Arthur sent for Gageby, appellant's agent, who had general direction from his principal to let the water off of any of his lands when necessary. It was under his direction and supervision that the ditch was cut. He was thus acting within the scope of his agency, and in such case his acts were the acts of the principal. The rule prevails that where a principal employs an agent or servant, and directs him to act under certain conditions, and commits to his discretion the duty of determining when and what action may be necessary, the principal will be responsible for the misjudgment or misconduct of the agent. *Oakland City, etc., Soc.* v. *Bingham,* 4 Ind. App. 545. If an agent keeps within the bounds of his authority, there exists a legal unity between him and his employer, and the principal is as much liable when the agent's acts are wrongful and tortious as when they are rightful. Cooley, Torts, *122. See *New Orleans, etc., R. Co.* v. *Bailey,* 40 Miss. 395.

Appellant relies for a reversal upon the case of *Maxwell* v. *Shirts,* 27 Ind. App. 529, 87 Am. St. 268. In that case appellant Rooker owned certain real estate and leased it to his co-appellant Maxwell. Appellee sued them jointly for damages caused by diverting water onto his premises, and to enjoin them from continuing the nuisance. The evidence showed that the nuisance was created by the tenant after the beginning of the tenancy, and it was not shown that Rooker had anything to do with its creation or. maintenance, or that he in fact knew of its existence until suit was brought. It was held that he was not liable. A different question would have been presented if Rooker had been a party to creating the nuisance, or had directed his tenant in what he did. That case makes the distinction showing that if Rooker had been present and participated in creating the nuisance, or had directed that it be created, he would have been liable.

The case of *Stickney* v. *Munroe,* 44 Me. 195, is also re-lied upon by appellant. That case is not analogous to the one under consideration, for the reason that the act of the agent, for which it was sought to hold the principal liable, was not within the scope of his agency, and the act was not directed by the principal, and he knew nothing of it.

In this case, when appellant's tenant sent for Gageby, and he came, he was acting for and on behalf of the appellant, for he did just what he had been directed to do, and hence was acting within the scope of his agency. This binds the principal.

We do not find any reversible error. Judgment affirmed.