OCEANA OIL PRODUCERS, INC. *v.* THE PORTLAND
SILO COMPANY.

[No. 28,838. Filed October 3, 1951.]

*Roscoe D. Wheat* and *James W. Grimes,* both of Portland, for appellant.

*Gordon, Edris & Thompson,* of Bluffton, and *Moran & Abromson,* of Portland, for appellee.

GILKISON, J.—In its amended complaint appellee seeks to collect damages from appellant for alleged breach of a written oil and gas lease.

The cause was put at issue by answer pleading no information as to certain averments, and denial as to all others.

The cause was tried by the court without a jury. On December 21, 1949, it found for appellee assessing his damages at $650 and costs, and rendered judgment accordingly. Appellant's motion for new trial was overruled. From this judgment and ruling the appeal is taken.

Appellee became the fee simple owner of a certain eighty acres of real estate in Jay County, Indiana on July 15, 1944, upon which a certain gas and oil lease executed by appellee's remote grantors on May 31, 1924, was in effect—owned by appellant, and upon which it had five producing oil wells, some of which it continued to operate until April, 1945. The wells were "pulled" in June, 1946. Each had produced oil and gas. A powerhouse with a heavy concrete base sunk in the ground, five separate rod lines hung upon steel posts, pipe lines above and below plow depth and oil storage tanks were likewise located thereon. Appellant and its predecessors built dirt mounds and made excavations at numerous locations. Large and heavy timbers were buried around each well. This had been done in the operation of the wells on the leased premises.

The provisions of the lease pertinent to the questions presented are as follows:

That the lessor granted to the lessee, "its successors and assigns for the purpose and with the exclusive

right of drilling and operating for petroleum, oil and gas all that certain tract of land situated" (Description) "Together with the right of way over said premises to the place of operating, the right to lay pipes to convey water, oil and gas and the right to erect and maintain all buildings and structures necessary for said operations, and the right to remove any machinery, fixtures or buildings placed on said premises by the" lessee "at any time."

The lessees, "are to have and to hold the said premises for and during the term of five years from the date hereof and as much longer as oil or gas is found or produced in paying quantities thereon."

The lessor "shall have full use and enjoy said premises for farming except such parts as may be necessary for said operations."

The lessee agrees to pay lessor "the full equal one-eighth part of all oil produced or saved from the premises and to deliver the same, free of expenses into the tanks or pipe lines, to the credit of the" lessor.

The lessee "agrees to . . . leave the tilling in as good order as found, . . ."

"It is fully understood by and between the parties hereto, that the rights and privileges herein conferred shall be construed to mean simply a lease or privilege to drill and operate as above set forth, for petroleum, oil and gas.

"It is understood between the parties to this agreement, that all conditions between the parties hereunto, shall extend to their heirs, executors and assigns."

Appellee received two royalty payments after it bought the farm as follows: November 19, 1944, $5.92, April 10, 1945, $4.16 a total of $10.08.

Appellant pulled the wells "during oats time in 1946" piled the pipe and removed it some six months later.

The depressions were never filled and the mounds were never leveled by appellant. Some thirty of the rod line pipes were not removed. The power house foundation, the heavy buried timber around the wells and the concrete engine foundation were not removed by appellant. Appellee blasted them out in the fall of 1948 at a cost of about $75.00. Appellant pulled some of the rod-line pipes and removed three large tanks in late 1947. Appellee hauled dirt and filled in the depression left where the tanks had stood, at a cost of about $75.00, and took up some of the pipe remaining in the ground. All that was above plow depth has been plowed up. About four hundred feet of two inch pipe still remains under ground below plow depth. With this exception, all remaining fixtures were removed from the ground by appellee in the fall of 1948, the last thing removed by appellant was the oil tanks removed in 1947.

Appellee produced four witnesses who testified that the rental value of the real estate in question, with the obstructions on it as noted, from the spring of 1945 was $6.00 per acre per annum.

With debris and fixtures removed from the farm the rental value would have been $10 to $12 per acre per annum.

In the argument of its brief appellant contends that the finding is not supported by sufficient evidence; and is contrary to law; and that the court erroneously admitted evidence of the rental value per acre of the leased real estate for the years 1945, 1946 and 1947 with appellant's fixtures, and other structures on it and what its rental value would have been had they been seasonably removed. Other questions are thereby waived. Rule 2-17, Indiana Supreme Court.

Both parties agree that the action is for breach of contract. The contract is the written gas and oil lease, pertinent parts of which are noted above. ■■ The right of appellant to hold the premises are limited thus: "to have and to hold the said premises for and during the term of five years from the date hereof (May 31, 1924) and as much longer as oil or gas is found or produced in paying quantities thereon." The date when oil and gas ceased to be found or produced in paying quantities thereon is very definitely fixed by the date of the last royalty check issued to appellee and being April 10, 1945. At that time appellant's rights to occupy the premises under the lease ceased and it then became its duty within a reasonable time thereafter to remove its property from the premises, "and leave the tilling in as good order as found." The rule in Indiana seems to be that "where the right to remove property 'at any time' has been reserved in the lease, such a right is not unlimited as to time but is limited to a reasonable time after the expiration of the lease." *Perry* v. *Acme Oil Co.* (1909), 44 Ind. App. 207, 212, 88 N. E. 859; *Michaels* v. *Pontius* (1922), 83 Ind. App. 66, 71, 137 N. E. 579; *Shellar* v. *Shivers et al., Appellants* (1895), 171 Pa. 569, 571, 33 Atl. 95. See also 7 C. J. S., *At Any Time*, p. 158.

Appellant's right to occupy the premises is explained and limited by the provision in the lease that, ". . . the rights and privileges herein conferred shall be construed to mean simply a lease or privilege to drill and operate as above set forth, for petroleum, oil and gas." Appellee's rights to occupy the premises are covered by the provision in the lease, that it "shall have full use and enjoy said premises for farming except such parts as may be necessary for said operations."

After appellant ceased to operate its lease, it had no right to continue to occupy the premises, for an unreasonable period of time. To do so was a clear breach of its lease contract.

After it ceased operations on the leased premises, it was appellant's duty to remove its property within a reasonable time thereafter. Its failure so to do was a breach of its lease contract.

After removing its property from the leased premises it was appellant's duty to put the premises in as good condition for tilling as it found them when it went into possession under the lease. Its failure to do so was a breach of its lease contract.

Appellant was still removing its property late in 1947 and appellee had to finish it in the fall of 1949.

Appellant objected to questions put to each of the four witnesses seeking to elicit proof of the annual rental value of the premises involved, for the years 1945, 1946 and 1947 occupied as it was by appellant's equipment and what its rental value would have been for these years if this equipment had been removed.

The reasons for the objections—as condensed by us—were that the questions do not support any issue in the case; that appellee knew that appellant's equipment was on the farm when it bought the farm; that appellee accepted rent for the oil taken from the farm; and that the rental value is not in issue.

The objections were overruled as were the motions to strike out the answers.

An examination of the issues joined in the action discloses that the rental value of the farm for the years 1945, 1946 and 1947 with the obstructions thereon, and with them removed was a very material issue in the case. Loss of rentals for these years was specifically alleged in the complaint.

It is the rule that the proper measure of damages because of the deprivation of the use of property is the value of such use. This is ordinarily measured by the property's fair rental value. *Maddox* v. *Yocum* (1944), 114 Ind. App. 390, 399, 52 N. E. 2d 636; *New York Central R. Co.* v. *Reidenbach* (1919), 71 Ind. App. 390, 393, 125 N. E. 55; 25 C. J. S., Damages, § 41, p. 514; § 84, p. 603; 15 Am. Jur., Damages, § 129, p. 537.

We find no error in the ruling of the court as to the admissibility of this evidence.

■ There is ample evidence in the record supporting each essential averment of the complaint, the finding therefore is not contrary to law.

The damage assessed is well within the limits of the damage proven and is not excessive. In the absence of any evidence or lack of evidence indicating ■ prejudice, partiality or corruption, the finding of the trial court will not be disturbed because of alleged excessive damage. *The Ohio and Mississippi Railway Company* v. *Collarn* (1881), 73 Ind. 261, 274; *The Indiana Car Company* v. *Parker* (1885), 100 Ind. 181, 196; *The Louisville, New Albany and Chicago Railway Company* v. *Falvey* (1885), 104 Ind. 409, 430, 3 N. E. 389, 4 N. E. 908.

Finding no reversible error in the record the judgment is affirmed.

Draper, C. J., not participating.

NOTE.—Reported in 100 N. E. 2d 895.