MILLER, ET AL. ETC. *v.* LONG

[No. 18,645. Filed January 17, 1956. Rehearing denied February 23, 1956. Transfer denied May 22, 1956.]

484

*Willis K. Kunz* and *Halbert W. Kunz,* of Indianapolis, for appellant.

*John M. Hammonds* and *Ben F. Hatfield, Jr.,* of Indianapolis, for appellee.

KELLEY, J.—Action by appellee for the alleged conversion of his tractor by appellants, who, excluding Louis Somers, are partners in the tractor business. Upon trial by the court, without jury, of the issues made by appellee's third amended complaint and appellants' answer in two paragraphs, the court found for appellee and entered judgment that appellee recover of appellants, jointly and severally, damages in the amount of $1500.00, plus $930.00 special damages, and costs.

Appellants' motion for a new trial specifies that the amount of recovery is too large, that the decision of the court is not sustained by sufficient evidence and is contrary to law, that the court erred in overruling appellants' motion made at the conclusion of appellee's evidence, to find for them, excepting therefrom appellant Louis Somers, and that the court erred in "sustaining the objection" of appellee to a certain stated exhibit offered in evidence by appellants.

Appellants fail to discuss or argue the specifications of their new trial motion that the court erred in overruling their motion to find for them made at the con-

clusion of appellee's evidence, and that the court erred in "sustaining the objection" of appellee to the admission in evidence of a certain exhibit offered in evidence by appellants. We, therefore, treat said specifications as waived and will notice them no more.

The evidence favorable to appellee tends to establish that appellee purchased a used Model M. Allis-Chalmers Dozer for $1500.00; that the tractor was delivered to appellee about September 27th or 28th, 1951, and up to October 22, 1951 appellee had used it a total of three or four hours in light work, during which time appellee observed that it pumped oil and fouled out the plugs; that about October 17, 1951, appellee inquired of appellants, with whom he was not then acquainted, at their plant in Lawrence concerning a repair job or a "motor kit," as it is referred to; that no information as to the inquiry was then given but appellee was asked if he would be interested in making a trade to which he replied that he might be interested if he could purchase a like machine without too much money, and thereupon appellant, Louis Somers, a salesman for the appellant partners, took appellee to see a D grader in operation and another tractor.

Thereafter appellant Somers gave appellee an appraisal figure of $850.00 for his tractor which appellee rejected as being far too low, and Somers said he thought he could find a buyer for $1,250.00, to which appellee replied that he was not interested in selling the tractor at any price. The same or a day later appellants gave appellee a price for the repair of his tractor and appellee on October 20, 1951, made arrangements to have the tractor, then in enclosed ground, picked up and delivered to appellants' plant for repair. But, around the 20th, 21st, 22nd, or 24th of October, 1951, before the tractor could be picked up for delivery to

appellants' plant for repair, appellant, Louis Somers, told appellee he had sold the tractor and that a credit of $1,500.00 to his account had been placed on the books of appellants. Appellee then told said Somers that he had no right to sell the tractor and if it had been taken away "for him to put it back where it was."

Appellee had intended to use his tractor in his business of constructing small homes and had planned to use it in the final construction work of a dam in Brown County which he was in the process of building on his property there during the times aforesaid. The dam, at the time of the alleged conversion of the tractor, had been partially constructed as a "rough grade water dam". It had yet to be fine graded at the top and a partially completed spillway finished, without which, the evidence reflects, the dam would wash out. Appellee had paid out the sum of $1,250.00 for the rough grade construction of the dam. When appellee learned that his tractor had been sold and moved away he endeavored several times to have the dam completed by Mr. Neal, a contractor who had been working on said dam there in Brown County, but said Neal had previously moved his equipment back to Indianapolis and was not available for the work because of previous commitments. In the last week of November, 1951, the dam washed out and the cost of reconstructing it was approximately from $1,400.00 to $1,7000.00, which appellee had paid.

There is evidence to the effect that prior to the washout the spillway had been grooved out and that "trickle pipes" had been put in which, according to information given appellee by the Conservation Department, would carry over a million gallons each and provided all the outlet needed to take care of the overflow of the dam. Notwithstanding, it appears that the dam did wash out

and appellee testified that if his tractor had been available when Mr. Neal finished the rough grade he could have constructed the spillway with the tractor and had he completed the spillway the dam would not have washed out. Three or four days after the washout, appellee, with Mr. Neal using an Insley back-hoe, began the reconstruction of the dam including the spillway. It was fully completed at the cost aforesaid with the dam being built higher than before and with the spillway at the same previous level. There is sharp conflict in the evidence as to the availability to appellee, during the twenty-five or more day period between the time Mr. Neal had left the job and moved his material and the washout, of equipment with which he could have finished the construction of the spillway.

This appeal poses these questions: (1) Is the finding of the court that appellants converted appellee's tractor sustained by sufficient evidence or contrary to law? (2) Was appellee entitled to recover special damages? (3) If special damages were allowable, did appellee use reasonable diligence to mitigate his damages?

(1). It is apparent that this is not an action for equitable conversion but is an action for damages allegedly resulting to appellee by reason of the alleged tortious appropriation by appellants of personal property belonging to and possessed by appellee. The appropriation of said property must consist of the exercise by appellants of dominion over said personal property to the exclusion of and in defiance of appellee's rights therein.

Appellants urge that the two basic "concepts" necessary to establish conversion are "the converter coming into possession either constructively or actually" and that by such possession "the true owner is denied his right to and absolute dominion over his property."

They then say that both these basic concepts "are lacking from the case at bar." The evidence, they assert, presents the picture of a "middle man or agent seeking to bring the owner and purchaser together," and that appellant Somers "asserted no title or dominion to the property at any time, and in fact never came into possession." They cite *Beaver Products Company* v. *Voorhees* (1923), 81 Ind. App. 181, 142 N. E. 717, as supporting this proposition.

In the cited case, however, the dealer had authorized the buyer of the unsatisfactory shingles to sell them, which he did prior to his receipt of the dealer's order for reshipment to the dealer. The court held that the sale authorization constituted the buyer the agent of the dealer and that the buyer was acting in that capacity when he sold the shingles. Such is not the case reflected by the evidence in this action.

Appellants have referred to evidence and facts in the case which, if standing alone or undisputed, would lend great weight to their contention that Somers was made the agent of appellee to sell his tractor. But the evidence and circumstances alluded to by appellants do not stand alone nor can they be considered undisputed. The court apparently concluded that Somers was not appellee's agent for sale of the tractor and there is evidence to sustain that conclusion. For instance, it is true, as appellants say, that a trade-in figure for appellee's tractor was discussed and that appellee said he would consider nothing less than $1,500.00, from which it might have been inferred that appellee authorized a trade-in or sale of his tractor at a figure of $1,500.00. However, there is testimony by appellee that he told Mr. Somers that he "was not interested in selling the tractor at any price," and there were other facts established by the evidence from which the court

could, and apparently did, conclude that appellee made no agreement or arrangement for the sale of his tractor by Somers or anyone else.

Appellants earnestly insist that a sale of another's property does not in and of itself constitute a conversion, that under the evidence in this cause appellants never came into the possession of the tractor nor did they assert any claim or title inconsistent with appellee's rights, and that Somers at all times recognized appellee's ownership and title to the property. In this connection they rely upon *The Steel Construction Company* v. *Rossville Alcohol and Chemical Company* (1938), 105 Ind. App. 520, 12 N. E. 2d 987. That case contains no such holding as appellants propose. As stated in the annotation of 129 A. L. R. 638, 639 and 640, the court held that the established facts were insufficient to establish a conversion, *in the absence of a denial of plaintiff's claim to or ownership of the property, or any other act of dominion over it.* (Our emphasis.)

In the case before us the evidence discloses that appellants sold appellee's property, which was not on their land or premises nor under their control, without any consent or authorization so to do by appellee and without his knowledge. And, according to Somers' own testimony, he had the prospective purchaser to inspect it and test it in appellee's absence, and said that he knew it had been picked up by the purchaser because "I went with Jack Free (the purchaser) to show him where it was." Appellee testified that when he went out to the place where the tractor had been, he found the gate down and the tracks "showed where it (the tractor) had been driven out of the lot." While we might be justly timorous in accepting without great caution the language and holding of the cited case, we are com-

pelled to do no more at this sitting than to suggest that the acts and doings of appellants, as above narrated, in no wise fit into the holding there announced.

In the absence of any authorization by appellee for the sale by appellants of his tractor, it must be clear that the sale thereof by appellants and its delivery to and removal by the purchaser, at appellants' direction, from the enclosed area in which it was located, all without the knowledge, authority or consent of appellee, amounted to the wrongful exercise by appellants of the possesion of and absolute dominion over the tractor to the exclusion of and in defiance of appellee's right thereto. "The most common illustration of an act of dominion . . . is the case of a sale and delivery of goods made without authority of the owner. Every sale without restriction by a person having no right to sell is a conversion, if followed by delivery, and renders the vendor liable to an action of trover." Bigelow on Torts, Eighth Edition, Chapter XIII, Section 3, page 396. We are at loss to appreciate the force of appellants' said contention that the "two basic concepts" are lacking. Rather do we think that they are preeminently present.

Appellants imply that appellee should have demanded of the purchaser a return of the tractor since the latter was "clearly a converter". We are not now required to determine any questions of rights or causes existing by or between appellee and the purchaser of the tractor. Such matters are not here involved. Suffice it to say that appellee was not legally bound to negotiate with nor make a demand upon such purchaser as a condition precedent to this action against appellants, and the failure of appellee to make such demand of or negotiate with such purchaser is no

defense to appellee's charge of conversion by appellants.

Appellants next contend that the evidence shows "conclusively" that Somers was acting as a "middle man" to bring appellee and the purchaser together, that the members of the partnership took no part in the transaction, other than an indication of what they would give appellee as a trade-in allowance, and did not authorize it. Thus, they say, a conversion by the partnership is not supported by the evidence. They cite no authority on the point.

It definitely appears from what we have previously said that we do not consider that the evidence "conclusively" shows that said Somers was a "middle man" acting between appellee and a purchaser. Appellants do not refer us to any evidence conclusively or otherwise establishing such an asserted fact. Nor do we find such. Somers testified that he worked for and represented the Flesch-Miller Tractor Company partnership consisting of Anna Mae Miller, Eugene E. Flesch, and Owen Gahagen, and that he had been their salesman for about three and one-half years.

Mr. Gahagen said that he was a partner in the company, that he met and conversed with appellee and showed him a grader and a tractor; and then told appellee he would refer his name to Mr. Somers as the salesman in that territory, which he afterward did.

Appellant Flesch testified that he was a partner; that the sale by Mr. Somers was in the course of his employment; that the partnership accepted and received the $1,500.00 received by Somers from the sale of the tractor; that the contract was discounted at the bank, with recourse; that the contract was made with the company (the partnership) and the consideration there-

for went to the company and not Mr. Somers; that he didn't authorize the sale to Mr. Free, but learned of it afterward and that we (the partnership) agreed to take the $1,500.00 as a down payment on a subsequent purchase "after this transaction had been completed."

It thus appears from appellants' own evidence that the sale by Somers of appellee's tractor was in the course of his employment and that although they did not authorize the particular sale made by Somers, they accepted, after they learned of it, what they then believed to be the benefits of the sale, by accepting the contract made in their names for the sale of the tractor and discounting it at the bank and crediting the $1,500.00 thereby received as a down payment on a subsequent purchase by appellee.

It is clear that when Somers, as the agent and salesman of the appellant partnership, made a sale of appellee's tractor he was acting, as appellant Flesch testified, in the course of his employment. If appellee had authorized, directed, or agreed to the sale, the transaction as handled by appellants would no doubt have been in keeping with their usual business procedure. Apparently, the only thing which was wrong with the sale of the tractor by Somers was that he didn't secure the authority or consent of appellee for its sale. Somers, therefore, acting within the scope of his agency committed a tort known as conversion when he sold and delivered appellee's tractor without the latter's authority so to do.

It is the general rule that the principal is liable to third persons for torts committed by its agent while acting within the course and scope of his employment. 3 C. J. S., *Agency,* Sec. 255, page 186; 2 Am. Jur., *Agency,* Sec. 360, page 279; *The Oak-*

*land City Agricultural and Industrial Society* v. *Bingham* (1891), 4 Ind. App. 545, 31 N. E. 383; *Ogle, et al.* v. *Hudson* (1903), 30 Ind. App. 539, 66 N. E. 702. The rule finds application in the case of a conversion. 2 Am. Jur., Agency, Sec. 361, note 4, page 280.

Although the appellant partnership may not have authorized the particular tortious act committed by its agent, yet they became responsible therefor by entrusting to him (as testified to by appellant Gahagen) the matter which put him in position to commit the conversion while executing the agency transaction within the scope of his employment. See 2 Am. Jur., *Agency,* Sec. 363, page 283.

While we find no authority in Indiana precisely so holding, we think that in view of the adoption by this State of the Uniform Partnership Act, a partnership is liable, jointly and severally, for torts committed by the servant or agent of the firm acting within the scope of his employment. In *Weaver v. Marcus* (1948), 165 F. 2d 862, 175 A. L. R. 1305, the court said: "The Act (Uniform Partnership Act) is crystal clear that the liability is joint and several where the wrongful act is that of a partner (citing cases). *We see no reason for a different rule when the wrongful act is committed by an employee of the partnership within the scope of his employment.*" (Our emphasis). For other cases holding to the general principle referred to, see the cases cited in the annotation in 175 A. L. R., Sec. 3, page 1316. See, also, 68 C. J. S., *Partnership,* Sec. 183, page 638. See, also, Acts 1949, ch. 114, page 283, Burns' Anno. St., 1951 Replacement, Sec. 50-401, et seq., and particularly Sec. 50-413.

We think, further, that the evidence when taken in its entirety, contained sufficient to warrant the court

in inferring a ratification by the partnership of the tort of its agent after coming into knowledge thereof. 2 C. J. S., *Agency,* Sec. 37d. The partnership accepted and retained the contract of sale made by Somers in the partnership name and discounted it at the bank. After knowledge of the unauthorized sale of appellee's property was acquired, the partnership, as testified to by appellant Flesch, anticipating that the money received from such sale would be used as a down payment on a subsequent purchase by appellee, retained the money and credited it on their books for such purpose. At no time did the partnership disaffirm or disclaim the act committed. Apparently, what they sought to do, as made manifest by inference from the disclosed evidentiary facts, was to retain the benefits of the transaction with a view to a future sale of equipment by them to appellee and at the same time repudiate the burden of the transaction. This they will not be permitted to do. *Adams Express Company* v. *Carnahan* (1902), 29 Ind. App. 606, 613, 63 N. E. 245, 64 N. E. 647.

(2). In charging that the amount of recovery is too large, appellants complain of the allowance by the court of special damages and assert that the court's finding in that regard is not sustained by sufficient evidence and is contrary to law. They do not seriously question the $1,500.00 damages awarded by the court since such amount was what appellee paid for the tractor and, likewise, the amount for which appellants sold the tractor.

The appellants state and adhere to the general rule of damages in conversion which has been declared to be the value of the converted property at the time of the conversion, with interest from the date of conversion. "It is true that the measure

of damages is as stated in many instances, but such rule, while generally recognized, is not applicable to all kinds of property under all conditions and is subject to some exceptions. The underlying principle of universal application is that of fair and just compensation for the loss or damage sustained." *Aufderheide* v. *Fulk* (1916(, 64 Ind. App. 149, 153, 112 N. E. 399.

Appellants, however, while admitting that there is "little question" from the record that appellee "suffered such damages (occasioned by the wash-out of the dam) and that they were sufficient to support the amount of special damages allowed by the trial court," nevertheless insist that if such damages are recoverable at all they are, in this case, too remote and speculative and would not have been reasonably anticipated to result from the act of conversion. Appellee, on the other hand, cites and relies upon 53 Am. Jur. 106, page 896, to the effect that the general rule is that "special damages, which have been defined as such damages as arise from the special circumstances of the case, . . . if properly pleaded, may be added to the general damages which the law presumes or implies from the mere invasion of the plaintiff's rights . . . and that damages, in addition to the value of the property taken, for any injury proximately resulting from the conversion should be allowed."

In considering appellants' new trial specifications that the amount recovered is excessive and that the decision of the court is contrary to law, certain well defined and established pertinent legal principles must be observed. It has been frequently stated that the amount of damages is largely within the discretion of the trier of the facts and will seldom be disturbed on the ground of excessiveness unless it is so great as to indicate prejudice, passion, or partiality,

*Oceana Oil Producers, Inc.* v. *The Portland Silo Company* (1951), 229 Ind. 656, 663, point 8, 100 N. E. 2d 895, or the amount awarded finds no basis in the evidence for the allowance thereof, or the adoption of an erroneous measure of damages accounts for the excess. 89 C. J. S., Trover and Conversion, Sec. 201, page 661.

Since no claim of prejudice, passion, or partiality is made, and appellants admit that the damages suffered by appellee, if allowable, were sufficient to support the special damages allowed by the court, appellants' contention, in effect, resolves into the asserted proposal that the court applied to the established facts in this case an erroneous rule or measure of damages and, therefore, the decision of the court is contrary to law.

Our courts do not adhere under all conditions and in all cases to the general rule of damages in conversion as appellants urge. We have above quoted from *Aufderheide* v. *Fulk, supra,* to the effect that the general rule or measure ·of damages in trover actions is not applicable under all conditions and is subject to some exceptions and that the underlying principle is that of fair and just compensation for the loss sustained. Further, the court said in that case that "Special damages are such as *actually* result from the wrong done but which do. not *necessarily* result therefrom, and for that reason are not implied by law, and to be recovered must be specially alleged and proven." (Our emphasis). It may be appropriately added that special damages always arise from or grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not to the other, and follow as a natural and proximate consequence of the wrongful act by reason of the special circumstances or conditions existing in the particular case. 25 C. J. S.,

Damages, Sec. 2, pages 456 and 457, "General Damages" and 459 and 460, "Special Damages."

Thus it is, as a logical concomitant, that in trover and conversion, the particular conditions and circumstances of each particular case dictate the particular governing rule of damages. In other words, no hard and fast rule can be laid down as applicable to all cases, under all conditions, and as an invariable precedent in all cases. So it is, too, that judicial minds differ, and what one, in a particular case, may consider appropriate for the application of the rule for special damages, another may deny. So it is, also, that only in those cases where it is manifestly apparent that an erroneous rule or principle has been applied to the particular existing facts or conditions can the appellate tribunal interfere and substitute its judgment for that of the original forum.

In the case before us no contention is made that the special damages claimed by appellee were not properly pleaded. The evidence in the record tends to prove that appellee had planned to use this tractor, recently purchased, in the completion of the dam and the spillway; that after learning of the conversion by appellants and that the tractor had been removed, he made several attempts at several places to secure equipment to continue the work on the dam but was unable to obtain it; that such equipment was difficult to rent or purchase; that without the spillway properly constructed, the dam would wash out; that as a result of his inability to secure equipment for the finishing of the dam, "the water went on over the top, and washed a large portion of it out"; that if his tractor had been available he could have constructed the spillway, and if he could have completed the spillway the dam would not have washed out; that the defective con-

dition of the tractor may have necessitated a longer time to complete the work but "it would have done the job"; that appellee had the dam reconstructed, with an additional height of from one to five feet, at a cost of $1,400.00 to $1,700.00, and that the cost of the additional height "would not exceed $500.00."

In view of the unusual existing facts and circumstances made apparent by the referred to evidence, we cannot say, as a matter of law, that the court adopted and applied thereto an erroneous principle of law. The evidence shows a sequel of events and occurrences which actually happened to appellee's damage as a result of his being deprived of the use of his tractor when needed. Nothing suppositional, conjectural, speculative, or of possible future occurrence is indicated by the evidence. Rather does it reflect an actual, definite, present, provable loss, traceable directly to the missing tractor made unavailable by its conversion and removal by appellants.

The amount allowed by the court as special damages was considerably less than the amount prayed for in appellee's complaint and well within the maximum damage authorized by the evidence. Appellants in no way challenged the allegations of the complaint pleading special damages nor did they interpose and preserve any objection to appellee's evidence offered in support of the issues raised by such allegations and appellants' answer thereto. Seemingly they were content to chance a favorable determination of such issues and then seek a reversal of the unfavorable result by the specification of excessive damages.

It is said in *State* v. *Trotter, et al.* (1938), 214 Ind. 68, 14 N. E. 2d 550, "The fourth cause for a new trial, that the damages are excessive, which applies to tort cases only, and the fifth cause, 'error in the assessment

of recovery, whether too large or too small, where the action is upon a contract or for the injury or detention of property', *involve questions of law only.* Such causes for a new trial are only available in the motion or on appeal where it appears that the amount of the damages or recovery is too large or too small *as a matter of law.* If, taking into consideration all of the evidence most favorable to the successful party, the court can say that the recovery is too large, then, and only then, is the complaining party entitled to a new trial, or a reversal for failing to grant it, *upon those grounds; . . ."* (Our emphasis).

In that case, however, appellant's objections to appellee's offered evidence of certain items of damage were unavailing and as a consequence the jury was permitted to consider improper elements of damage. The errors as to the court's ruling as to said objections were properly preserved and presented by the appellant. The trial court also refused tendered instructions of appellant pertinent to the subject. For such errors the judgment was reversed. In this case, no questions as to the propriety of the allegations of the complaint or of the admission in evidence of asserted improper elements of damage were preserved and presented by appellants. Therefore, under appellants' specification that the recovery is too large, we can only determine whether, as a matter of law, the evidence most favorable to appellee leads to the single conclusion of excessive recovery. We are constrained to hold that a fair consideration of such evidence evokes no such conclusion.

(3). Appellants' closing contention is that appellee failed to mitigate his damages. They urge in support of their said contention that appellee had "extensive" time after he learned of the conversion of his tractor

to secure other equipment, that there was a clear inference from the evidence that other equipment was available to appellee "for a price", that Mr. Flesch testified in effect that such equipment could have been rented or purchased by appellee; that appellants had a grader ready for delivery to appellee, that Mr. Neal said that his equipment was available to appellee at any time, and appellants imply that appellee did not really intend to build a spillway during the first construction of the dam.

Mitigation of damages is a matter of defense, the burden of proving which is on the party held liable to respond in damages, and the failure of such party to make out his defense cannot affect appellants' (here appellee's) right to recovery. *Mug* v. *Ostendorf* (1911), 49 Ind. App. 71, 96 N. E. 780. The evidence concerning the matters urged by appellants was in dispute and the finding of the court was adverse to appellants. We cannot weigh the evidence.

We find no error committed by the court in overruling appellants' motion for a new trial.

Judgment affirmed.

### ON PETITION FOR REHEARING

KELLEY, J.—Appellants, in point 5 of their petition for a rehearing, say:

"The court erred in its statement of the facts favorable to the appellee; namely, in the court's statement in Line 6, Page 4, of its opinion that 'but said Neal had previously moved his equipment back to Indianapolis', in that the testimony of appellee clearly states that Neal was in Brown County at such time. (Tr. P. 246, L. 21 and following)."

We have reviewed page 4 and line 6, and other lines on said page of our opinion, and do not find the statement referred to by appellants. We do find, on page 3, lines 10 to 15, of our opinion the subject referred to. We there said:

> "When appellee learned that his tractor had been sold and moved away he endeavored several times to have the dam completed by Mr. Neal, a contractor who had been working on said dam there in Brown County, but said Neal had previously moved his equipment back to Indianapolis and was not available for work because of previous commitments."

The transcript reference made by appellants is to the cross-examination of the appellee on rebuttal. In considering the validity of a challenge to the judgment of the trial court, we, as has been many times said by our courts, must take the evidence most favorable to the appellee. Appellants' brief, page 14, and the transcript, page 99, disclose the following from the testimony of appellee on direct examination:

> "Q. After you found that the tractor was not available for your use down there, what did you do, if anything?
>
> "A. Mr. Neal *had brought his equipment back to Indianapolis,* and *I contacted him several times* to try *to get him to take a piece of it down there,* and finally, when I contacted him *he was unable to do it, due to prior commitments.*"

It would seem that the foregoing quoted evidence fully sustains the objected to statement in our opinion.

The only other point of appellants' rehearing petition which we deem of significance is that our holding contravenes a ruling precedent of the Supreme Court, viz: *Citizens St. R. R. Co.* v. *Robbins* (1896), 144 Ind.

671, 42 N. E. 916, 43 N. E. 649, and is in conflict with *Nickey* v. *Zonker* (1889), 22 Ind. App. 211, 53 N. E. 478. The Robbins case declared the rule of measuring damages for the conversion of stock. We find nothing in our opinion which runs counter to the holding in that case. Nor do we perceive wherein it is contrary to the said Zonker case. A casual perusal of the latter mentioned case will disclose that the alleged damages were not proved nor was "the quantity and value of the property alleged to have been converted" established.

It seems to us that the rules applicable to damages in conversion as declared in *Aufderheide* v. *Fulk* (1916), 64 Ind. App. 149, 112 N. E. 399 (Transfer denied), cited in our opinion, are appropriate and convincing. It is noted that appellants make no reference thereto.

Petition for rehearing denied.

NOTE.—Reported in 131 N. E. 2d 348. Rehearing denied 132 N. E. 2d 272.